## Swan *versus* Commonwealth.

1. Evidence is not admissible, in a criminal prosecution, of the perpetration by the defendant of a crime other than that on trial, unless such a connection be shown between the two offenses as tends to establish that if the defendant were guilty of the one, he was also guilty of the other. The collateral or extrinsic offence must form a link in the chain of circumstances or proofs relied upon for conviction.

2. The circumstances under which such evidence may be admissible, considered.

3. A. and B. were jointly indicted for robbing C.'s store. On the same day and in the same locality, D.'s house was also robbed, to which offence A. had pleaded guilty on another indictment. The Commonwealth, on the theory that A. and B. were members of an organization banded together to commit burglary, offered the evidence of A.'s complicity in the robbing of D.'s house to support the indictment against A. and B. There was some evidence that on the day in question A. and B. were seen together in that locality.

*Held*, that no sufficient connection was established between the offences to warrant the submission to the jury of the evidence of A.'s complicity in the robbery of D.'s house so as to affect B.

October 8th 1883. Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., and PAXSON, J., absent.

ERROR to the Quarter Sessions of *Armstrong county :* Of October and November Term 1883, No. 211.

[Swan *v.* Commonwealth.]

Indictment of Charles Swan and F. E. Lynch for burglary and larceny.  Plea, not guilty.

Upon the trial, before NEALE, P. J., the following facts appeared : On the night of September 13th 1882, the store of H. Bush & Son, in Kittanning township, was broken into and the contents of the safe were carried away.  About the same time the house of Franklin Reynolds, in the same township, was robbed.  Lynch was indicted for the latter offence prior to the present trial, and pleaded guilty.  There was some evidence that the defendants had been together on the night of the robbery of Bush's store.  One witness testified that the " size " and " hats " of the defendants were like those of men whom she saw coming out of Bush's store on the night in question.  It was the theory of the Commonwealth that Swan, Lynch, and others belonged to a band of thieves, which had perpetrated these and other robberies in the township.  On the arrest of the defendants after the Bush robbery articles were found upon Lynch's person which, it was contended, showed his complicity in the robbery of Reynold's house.  The Commonwealth, therefore, offered one Ross Reynolds as a witness to identify the articles in question as those which were stolen from his father's house.  Objected to.  Objection overruled. Exception.

The witness then testified :  " I identify these handkerchiefs as my sister's, and this as my sister's, this as my sister's also. My father's house robbed on Thursday, during fair week, in the afternoon.  The first I saw of these articles after the robbery was at the Squire's office."

Defendant's counsel asked the court to withdraw the evidence of Mr. Reynolds, so far as Mr. Swan, one of the defendants is concerned, and to tell the jury that it cannot in any degree affect Swan.

By the Court.  I could not do that ; they were together, they acted together, and the jury will have to determine that question.  Exception.

Verdict, guilty in manner and form as indicted, and sentence pronounced thereon.  The defendant, Swan, took this writ of error, assigning as error, inter alia, the admission of Reynold's testimony, and the refusal of the court to limit its effect to Lynch.

*David Barclay*, for the plaintiff in error.

*M. F. Leason*, for the defendant in error.

Mr. Justice CLARK delivered the opinion of the court, October 29th 1883.

[Swan *v.* Commonwealth.]

We are of opinion that there was error in the refusal of the court to limit the effect of the testimony of Ross Reynolds, Esq., and in allowing it to go to the jury to affect Charles Swan, the plaintiff in error.

Testimony had been received showing the perpetration of other similar crimes in the vicinity, at and about the same time Lynch had plead guilty to one of these, the Reynold's robbery, and the testimony was admitted "to throw what light" the jury might " discover from it, of the parties charged, composing or being a part of an organization, banded together for the purpose of committing crimes of the kind charged."

It is certainly true that in a criminal trial, evidence may be received of any one of a system of crimes, mutually dependent, but there must be a system established between the offence on trial, and that introduced, to connect it with the defendant : Hester *v.* Commonwealth, 4 Norris 139.   To make one criminal act evidence of another, some connection must exist between them ; that connection must be traced in the general design, purpose or plan of the defendant, or it may be shown by such circumstances of identification, as necessarily tends to establish that the person who committed one must have been guilty of the other.   The collateral or extraneous offence must form a link in the chain of circumstances or proofs relied upon for conviction ; as an isolated or disconnected fact it is of no consequence ; a defendant cannot be convicted of the offence charged simply because he is guilty of another offence.

In the case of Goersen *v.* Commonwealth, 3 Out. 388, MERCUR, J., giving the result of all the cases upon the admissibility of such testimony, says : " Yet, under some circumstances, evidence of another offence by the defendant may be given.   Thus, it may be to establish identity ; to show the act charged was intentional and willful, not accidental ; to prove motive ; to show guilty knowledge and purpose, and to rebut any inference of mistake ; in case of death by poison, to prove the defendant knew the substance administered to be poison ; to show him to be one of an organization banded together to commit crimes of the kind charged ; and to connect the other offence with the one charged as part of the same transaction."

The only connection shown between the two offences was the fact, that they were committed in the same town, on the same day.   Lynch had confessed his guilt, as to one of the felonies, and there was some proof as to his guilt in the other. But what evidence was this as to Swan, who as yet was presumably innocent of both ?   There was no system established or shown between the two offences, that could have raised any presumption of Swan's connection with the robbery, charged in the indictment, from the identification of the articles which

[Swan v. Commonwealth.]

Lynch confessed he had stolen from Reynolds. If these articles had been found, wholly or in part, in Swan's possession, that would have connected him with the Reynold's robbery, and this, taken in connection with Lynch's confessed guilt of that crime, would have shown such a confederacy, in this character of crime, at the time and place of the offence on trial as would perhaps have rendered the evidence competent; but it is a rule of criminal evidence that an extraneous crime cannot be put in evidence against a defendant, without proof in some form, that he was concerned in its commission.

It is said that Lynch and Swan were frequently seen together, during the daytime of the 14th of September. This, as an independent fact, was properly for the consideration of the jury, but their association, so far as observed, was for lawful purposes, and proved no connection between the two offences. It was, of course, competent for the Commonwealth, as the defendants were jointly indicted and tried, to introduce any evidence tending to establish the guilt of either, although it might incidentally prejudice the other, but the testimony so introduced should be expressly limited in its effect: Brandt v. Commonwealth, 13 Norris 290.

There was, we think, sufficient evidence in this case, as against Charles Swan, to justify a submission to the jury, although it certainly was very slight; inasmuch, however, as the record contains no bill of exceptions to the charge of the court, that question is not properly before us.

Judgment can only be arrested in criminal cases, for causes appearing upon the face of the record; this is a general rule, and is well settled; an exception exists when pardon is pleaded before sentence.

> For the reasons assigned in the former part of this opinion, the judgment is reversed, and a venire facias de novo awarded.