COMMONWEALTH of Pennsylvania,
Appellee

v.

Richard A. BROWN, Appellant.

Superior Court of Pennsylvania.

Submitted April 2, 2012.

Filed July 25, 2012.

Scot R. Withers, West Chester, for appellant.

Christopher L. de Barrena–Sarobe, Assistant District Attorney, West Chester, for Commonwealth, appellee.

BEFORE: BOWES, DONOHUE, and COLVILLE,* JJ.

OPINION BY BOWES, J.:

Richard A. Brown appeals from the judgment of sentence of eight to sixteen years imprisonment entered by the trial court after his convictions for violating 35 P.S. § 780–113(a)(14), relating to his prescription of drugs to six patients between June 1, 2002 and June 30, 2004 while he

was a licensed practicing physician. Finding that the trial court erred in allowing the introduction of evidence of bad acts occurring in and before 1984 under the common law *res gestae* exception, we reverse and remand for a new trial.

Following a grand jury investigation, the Commonwealth charged Appellant and his wife with various tax and criminal conspiracy violations. In addition, Appellant was charged with 810 counts of violating the Controlled Substance, Drug, Device and Cosmetic Act ("Drug Act"). The trial court severed Appellant's drug charges from the remaining counts and ordered that he be tried separately for the Drug Act violations. At the same time, based on the pertinent statute of limitations, the court dismissed all charges related to Appellant's alleged procurement of his medical license through fraud. Accordingly, the Commonwealth filed an amended criminal information alleging 540 Drug Act violations and five counts each of tampering with public records and criminal conspiracy. The Commonwealth also sought to introduce evidence of prior bad acts, namely, Appellant's 2001 arrest and ultimate 2003 *nolo contendere* plea for committing the same offense for which he was convicted in this matter. Appellant responded by filing an omnibus pre-trial motion challenging the amended information, including a motion *in limine* seeking to prohibit the introduction of bad acts evidence.

The trial court awarded Appellant relief in the nature of dismissing 270 counts in the amended information and barring the introduction of evidence relating to Appellant's previous arrest and plea. The counts that remained pertained to Appellant's treatment of six patients between June 1, 2002 and June 30, 2004, and his prescription of certain medications to those

* Retired Senior Judge assigned to the Superior Court.

patients.[1] The court also prohibited the Commonwealth from presenting evidence that Appellant fraudulently received his medical degree and medical license. However, the court indicated that it would be willing to reconsider the issue if the Commonwealth argued that the fraud evidence was part of the *res gestae* of the case.[2] Taking its cue from the court, the Commonwealth filed a motion to reconsider and argued that in the late 1970's and early 1980's, Appellant fraudulently obtained his medical degree and license. It asserted that this evidence was part of the history and chain of events of the case at bar, and was necessary to prove that Appellant either prescribed drugs in bad faith in the course of his professional practice or did not act in accordance with treatment principles accepted by a responsible segment of the medical profession. The court thereafter authorized the introduction of the evidence as to how Appellant obtained his medical degree and license.

The central theme of the prosecution's opening statement, significant portions of its case, and closing argument revolved around Appellant's alleged improper receipt of his medical degree in the late 1970's and early 1980's, as well as his submission of forged or altered documents to obtain his medical license.[3] The Commonwealth also presented expert testimony concerning Appellant's treatment of six patients and the testimony of those patients. The expert testified that Appellant's treatment was not in accordance with treatment principles accepted by a responsible segment of the medical profession. According to the Commonwealth, Appellant was engaged in a scripts-for-cash scheme conducted from his home, which served as his office.

Appellant also presented his own medical expert who testified that Appellant's treatment was not improper, and pointed to treatment that these patients received after Appellant's care, which was similar in nature to what Appellant provided. The jury returned guilty verdicts on sixteen counts of unlawfully prescribing medicine under section 780–113(a)(14).[4] The court subsequently sentenced Appellant to an aggregate sentence of eight to sixteen years incarceration. This appeal ensued. The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Pa.R.A.P. 1925(a) opinion. The matter is now ripe for our review.

Appellant presents the following questions for our consideration.

A. Whether the trial court erred as a matter of law and/or abused its discretion in its rulings on Appellant's pre-trial motions and the Commonwealth's motion for reconsideration, in which the trial court refused to preclude, and allowed the Commonwealth to present, over Appellant's objections at trial, evidence regarding allegations of fraud by Appellant in obtaining his license to

---

1. Appellant's license to practice medicine was suspended on July 1, 2004.

2. The Commonwealth did make this argument in its Pa.R.E. 404(b) notice seeking to use bad acts evidence, though its primary focus was on Appellant's earlier *nolo contendere* plea.

3. The Commonwealth presented evidence that Appellant claimed to have completed and passed certain classes necessary to obtain his medical degree *without* actually passing those courses, which also would have made him ineligible to receive a medical license.

4. The jury was charged on sixteen counts and not the 270 counts contained in the information.

practice medicine and evidence regarding Appellant's academic record, transcripts and credentials, resulting in prejudice to Appellant?

B. Whether the trial court erred as a matter of law and/or abused its discretion in overruling Appellant's objection to the evidence regarding his discharge from Chestnut Hill Hospital, and in permitting the testimony of a records custodian regarding Appellant[']s medical records when those records could not properly be authenticated, resulting in prejudice to Appellant?

C. Whether the jury's verdict was not supported by sufficient evidence where, as here, the Commonwealth failed to meet its burden of proving that Appellant violated the standard of care in the medical profession in caring for his patients?

Appellant's brief at 5.

We recently reiterated that a successful sufficiency-of-the-evidence challenge warrants discharge rather than a new trial, *see Commonwealth v. Stokes*, 38 A.3d 846 (Pa.Super.2011); therefore, we analyze Appellant's final issue at the onset. In reviewing a sufficiency claim, we find cynosure in the following well-settled precepts.

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Mobley*, 14 A.3d 887, 889–890 (Pa.Super.2011). Additionally, "in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." *Commonwealth v. Coleman*, 19 A.3d 1111, 1117 (Pa.Super.2011).

*Stokes, supra* at 853–854.

The relevant language of the statute under which Appellant was convicted reads:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

. . . .

(14) The administration, dispensing, delivery, gift or prescription of any controlled substance by any practitioner or professional assistant under the practitioner's direction and supervision unless done (i) in good faith in the course of his professional practice; (ii) within the scope of the patient relationship; (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession.

35 P.S. § 780–113(a)(14). The jury expressly found in its verdict that Appellant acted within the scope of the doctor-patient relationship. Thus, Appellant focuses his argument on the remaining aspects of the statute.

Appellant first argues that the prosecution did not prove that he prescribed the medications in bad faith. According to Appellant, the sole evidence introduced to show bad faith was that Appellant allegedly committed fraud in obtaining his medical degree and license before 1984. Appellant contends that, even assuming the evidence was admissible, it does not demonstrate any relationship to his actions in 2002 through 2004. Instead, he posits that the evidence establishes that he was a licensed doctor who treated six patients within the scope of the doctor-patient relationship.

Additionally, Appellant maintains that the Commonwealth failed to prove that no responsible segment of the medical profession would have approved of the treatment he provided. In this respect, Appellant highlights the testimony of his expert witness, Dr. Jason Brajer. Having reviewed the medical records for the six patients in question, Dr. Brajer testified to a reasonable degree of medical certainty that Appellant did not deviate from accepted standards of care. The Commonwealth for its part relies exclusively on the trial court's explanation as to why the evidence was sufficient. We conclude that, viewing the evidence in a light most favorable to the Commonwealth, the evidence was sufficient and note that the testimony of the Commonwealth's expert, Dr. William Vilensky, was itself sufficient to convict Appellant.

Dr. Vilensky examined the medical records of the six patients at issue: D.H., R.R., K.S., M.E., C.E., and L.W. With respect to D.H., Dr. Vilensky remarked that D.H. requested a prescription for Adipex to assist him in losing weight. Dr. Vilensky testified that Appellant prescribed this medication, a form of speed, for ten years and did not take vital signs or urine tests to confirm whether the patient was using the drug, which he opined was a deviation from accepted medical protocols. He stated that the drug is intended to be used for short periods, but D.H. visited Appellant each month for ten years to fill his prescription. Dr. Vilensky also pointed out that Appellant prescribed Viagra for D.H., who was then thirty-three years old, without examining him for erectile dysfunction.

In regards to R.R., Dr. Vilensky acknowledged that the patient had a history of cervical disk problems, but observed that he was treated with the highest dosages of hydrocodone and Tylenol and given Xanax. He noted that Appellant took the patient's vital signs only once during his initial visit. According to Dr. Vilensky, the patient's medical records did not reflect that Appellant monitored the patient's pain levels, performed physical examinations, conducted urine tests, or elicited an appropriate medical history.

As to K.S., Dr. Vilensky stated that Appellant treated him for pain that resulted from herniated lumbar disk surgery. Appellant prescribed K.S. with Endocet, a generic form of Percocet, and Valium, but did not provide a treatment plan. Dr. Vilensky highlighted that the patient also was prescribed high doses of Tylenol, which he stated could have a toxic effect on the liver, but Appellant did not monitor the patient's liver.

The doctor continued that Appellant's treatment of L.W. failed to meet medical standards. He set forth that L.W. complained of pain from a work-related injury and Appellant initially prescribed Oxycontin and then prescribed Percocet to her for three years before transitioning to Lorcet[5] and back to Oxycontin. Dr. Vilensky pos-

5. Lorcet is a form of hydrocodone and is a generic form of Vicodin.

ited that Appellant's instruction to take Oxycontin as needed was contrary to proper usage and that the patient returned for a refill of a ninety-day prescription within eleven days, and no explanation was provided in the medical records. In addition, Appellant treated L.W. with another generic form of Vicodin, Norco, and she returned every two weeks for refills.

In regards to M.E., Appellant treated him for pain related to temporomandibular joint pain ("TMJ") and migraine headaches from a work-related injury by prescribing Percocet monthly. Dr. Vilensky testified that Appellant's dispensing of 100 Percocet every two weeks for years to M.E. was unconscionable. Appellant also treated M.E.'s wife, C.E. She too complained of TMJ and Appellant prescribed Lorcet for her. Appellant did not conduct a physical examination of her jaw, set forth a pain management plan, or administer tests to determine if the patient was improving.

Dr. Vilensky also testified that, although Appellant treated the patients for other issues and did order liver tests for some of the patients, there was no indication that such tests were performed. He contended that similar treatment by later doctors was likewise improper. Dr. Vilensky was also skeptical of Appellant's acceptance of cash only and concluded in his report that Appellant sold narcotics and anxiolytics to individuals who did not get better but wanted a constant supply of drugs. Ultimately, Dr. Vilensky opined to a reasonable degree of medical certainty that Appellant did not treat the patients in good faith and that his treatment was not in accordance with principles accepted by a responsible segment of the medical profession.

While Appellant's expert disputed much of Dr. Vilensky's testimony, and Appellant's counsel thoroughly cross-examined Dr. Vilensky about similar treatment the patients were receiving from different doctors, we must view the evidence in a light most favorable to the Commonwealth. Accordingly, in evaluating the sufficiency of the evidence we do not re-weigh Appellant's evidence against that of the Commonwealth. It is apparent that the jury rejected the testimony of Appellant's expert. As the evidence introduced and summarized above established the elements of the crimes and is not so weak and inconclusive that no probability of fact can be derived therefrom, Appellant's sufficiency claim fails.

 Having addressed Appellant's sufficiency issue, we now examine his initial claim and, finding it meritorious, we award him a new trial. Appellant contends that the trial court erred in permitting evidence regarding allegations of fraud by Appellant in obtaining his medical license in the early 1980's and testimony regarding his alleged altering of academic records relating to his attainment of his medical degree in the late 1970's and early 1980's. A trial court's decision regarding an evidentiary ruling is governed by an abuse of discretion standard. *Commonwealth v. Aikens*, 990 A.2d 1181, 1184 (Pa.Super.2010); *Commonwealth v. Moser*, 999 A.2d 602 (Pa.Super.2010) (decision to grant or deny motion *in limine* evaluated for abuse of discretion).

 Herein, the trial court permitted the introduction of the evidence pursuant to the common law *res gestae* exception. Bad acts evidence is inadmissible to prove a defendant acted in conformity with those acts or to demonstrate a criminal propensity. *Aikens, supra*; Pa.R.E. 404(b)(1). However, evidence of bad acts is admissible pursuant to our rules of evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). This list is non-exclusive. *See*

*Commonwealth v. Reese*, 31 A.3d 708, 723 (Pa.Super.2011) (*en banc*). Indeed, prior to the codification of our rules of evidence, our Supreme Court set forth the following list of exceptions to the general prohibition against bad acts evidence:

(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one naturally tends to prove the others; (5) to establish the identity of the person charged with the commission of the crime on trial where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "*res gestae*" exception).

*Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835, 840 (1989) (citing *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491, 497 (1988)).

Our Supreme Court has consistently recognized that admission of distinct crimes may be proper where it is part of the history or natural development of the case, *i.e.*, the *res gestae* exception. *Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483, 497 (2009); *Lark, supra* at 497; *Commonwealth v. Brown*, 462 Pa. 578, 342 A.2d 84 (1975); *Commonwealth v. Coyle*, 415 Pa. 379, 203 A.2d 782 (1964); *Commonwealth v. Williams*, 307 Pa. 134, 160 A. 602, 607 (1932); *Commonwealth v. Dorst*, 285 Pa. 232, 132 A. 168 (1926);

*Commonwealth v. Coles*, 265 Pa. 362, 108 A. 826 (1919); *Commonwealth v. Haines*, 257 Pa. 289, 101 A. 641 (1917); *Swan v. Commonwealth*, 104 Pa. 218 (1883); *Goersen v. Commonwealth*, 99 Pa. 388 (1882); *Brown v. Commonwealth*, 76 Pa. 319 (1874); *Hopkins v. Commonwealth*, 50 Pa. 9 (1865). Instantly, the trial court admitted the evidence under this exception.

In *Lark, supra*, our Supreme Court explained,

the "*res gestae*" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, i.e., evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." McCormick, *Evidence*, § 190 (1972 2d ed.); *Carter v. United States*, 549 F.2d 77 (8th Cir. 1977); *United States v. Weeks*, 716 F.2d 830 (11th Cir.1983); *see also Commonwealth v. Coyle*, 415 Pa. 379, 389–91, 203 A.2d 782, 787 (1964) (evidence of other crimes admissible as these crimes were interwoven with crimes for which defendant was being prosecuted).

*Id.* at 497. Where the *res gestae* exception is applicable, the trial court must balance the probative value of such evidence against its prejudicial impact. *Commonwealth v. Powell*, 598 Pa. 224, 956 A.2d 406, 419 (2008). In conducting this balancing test,

courts must consider factors such as the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and "the degree to which the evidence probably will rouse the jury to overmastering hostility." McCormick, *Evidence* § 190 at 811 (4th ed.1992). *See also Commonwealth v. Frank*, 395 Pa.Super.

412, 577 A.2d 609 (1990) (enumerating balancing test factors, including ability for limiting instruction to reduce prejudice).

*Commonwealth v. Weakley,* 972 A.2d 1182, 1191 (Pa.Super.2009).

Appellant asserts that the Commonwealth's presentation of evidence for the first two and one-half days of trial respecting his alleged submission of forged or altered medical school transcripts, after charges related to these actions were dismissed, "was totally irrelevant to the charges on which Appellant was being tried[.]" Appellant's brief at 14. While acknowledging that prior bad acts may be admitted under the *res gestae* exception, Appellant highlights that this principle is applicable where the evidence completes the story of the crime **"by proving its immediate context of happenings near in time and place."** Appellant's brief at 15 (quoting *Lark, supra*) (emphasis in brief).

Appellant also maintains that even if the evidence is relevant, its prejudicial nature far outweighed its probative value. In this respect, Appellant avers that the Commonwealth did not need this evidence to prove that decades after the alleged bad acts, he improperly prescribed prescription medications to six patients. Appellant posits that "[w]hether or not Appellant forged his medical transcripts at some point prior to 1984 has nothing whatsoever to do with the care he provided to these patients in 2002–2004, particularly, where, as here, Appellant maintained his medical license in the Commonwealth continuously for twenty-three years." Appellant's brief at 16.

He continues that barring the Commonwealth from introducing this evidence would not have affected the prosecution's ability to establish the elements of the crime for which Appellant was charged. Further, Appellant submits that the simi-larities between the crimes are non-existent and that decades passed between the alleged forgeries and the current charges. Moreover, Appellant highlights that the drug charges did not grow out of nor were they caused by his purported forgery of medical transcripts and records. Since the alleged forged medical transcripts and related records did not provide context near in time or place respecting Appellant's treatment of patients in 2002 through 2004, he argues that the evidence was improperly admitted.

The Commonwealth responds that the decades-old evidence of Appellant's allegedly fraudulent receipt of his medical license and the doctoring of his academic records to receive his medical degree prove that Appellant acted in bad faith to obtain his license, which "led to his inability to perform his duties within the accepted norms of 'treatment principles accepted by a responsible segment of the medical profession[.]'" Commonwealth's brief at 7. According to the Commonwealth, evidence that Appellant obtained his medical license fraudulently is directly relevant to whether he acted in good faith with his patients twenty years later. In advancing this position, the Commonwealth provides that a doctor who does not have proper training will logically provide unsound treatment. Thus, it argues that whether Appellant was appropriately educated and trained is relevant to proving that he acted in a manner below the standards accepted in his profession.

In addition to the relevancy arguments forwarded by the Commonwealth, it contends that Appellant's failures in medical school and during post-graduate rotations completes the story of why he prescribed drugs in bad faith and acted below the standards acceptable by other practitioners. In sum, the Commonwealth asserts that Appellant's inability as a student led

to his inability to practice medicine at an acceptable level among his peers, which, in turn, caused him to act in bad faith in treating patients. Much of the Commonwealth's argument in this last respect is a *non-sequitur*. It does not logically flow that a poor medical student will act in bad faith in his practice. As the trial court originally stated,

> evidence of [Appellant's] academic attainment of his medical education and training has no bearing on whether his practice conformed to the norms of accepted medical practice, was conducted in good faith, and within the legitimate scope of the doctor-patient relationship. The fact remains he attended medical college and was issued a license to practice medicine by the Commonwealth, which he maintained for 20 years. The statutory charge against him is not one alleging faulty credentials but, rather, the dispensing by a "practitioner" of controlled substances in violation of the proscriptions of Section 780–113(a)(14).

Trial Court Order, 12/10/09, at 5 n. 4. More importantly, well-established precedent in the *res gestae* arena compels a finding that the decades-old evidence introduced in this case does not fit within the *res gestae* exception. A brief synopsis of the case law throughout Pennsylvania's history with respect to bad acts evidence is beneficial.

As early as 1863, in *Commonwealth v. Ferrigan*, 44 Pa. 386 (1863), this Commonwealth's published decisions reflected that another crime unconnected to that being prosecuted could not be introduced to raise a presumption that the defendant committed the charged crime. Nonetheless, the court opined that it was admissible to introduce evidence that the defendant, charged with murder, committed adultery with the wife of the deceased "down to or near the time of the homicide." *Id.* at 387. In reaching this conclusion, the court rea-

soned that, "where facts and circumstances amount to proof of another crime than that charged, and there is ground to believe that the crime charged grew out of it, or was in any way caused by it, such facts and circumstances may be proved to show the *quo animo* of the accused." *Id. Quo animo* is a Latin term for motive. Nevertheless, the court cautioned that testimony of a single instance of illicit sexual conduct "at a considerable distance in time from the period of the homicide, would be very unreliable." *Id.*

Later, in *Hopkins, supra*, our Supreme Court ruled admissible evidence that a defendant, fifteen minutes before a killing, threatened to kill someone on board the ship he was traveling. This transpired after he had earlier been shackled in irons due to a drunken brawl between sailors and marines on the ship. The court opined that the evidence was admissible to show intent and was part of the *res gestae* of the case. In doing so, the court rejected the defendant's claims that the evidence was inadmissible because it violated the principle that evidence that a defendant has a general disposition to commit the same kind of crime as that for which he is on trial, based on his prior actions, is improper.

The Supreme Court, however, rejected admission of bad acts evidence in *Shaffner v. Commonwealth*, 72 Pa. 60 (1872). There, the defendant was charged with murder by poisoning his wife. The Commonwealth introduced evidence that the defendant was intimate with another woman whose husband also died at the home of the defendant under circumstances demonstrating that he too may have been poisoned. The court held:

> To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some

purpose he intended to accomplish; or it must be necessary to identify the person of the actor, by a connection which shows that he who committed the one must have done the other. Without this obvious connection, it is not only unjust to the prisoner to compel him to acquit himself of two offences instead of one, but it is detrimental to justice to burthen a trial with multiplied issues that tend to confuse and mislead the jury. The most guilty criminal may be innocent of other offences charged against him, of which, if fairly tried, he might acquit himself. From the nature and prejudicial character of such evidence, it is obvious it should not be received, unless the mind plainly perceives that the commission of the one tends, by a visible connection, to prove the commission of the other by the prisoner. If the evidence be so dubious that the judge does not clearly perceive the connection, the benefit of the doubt should be given to the prisoner, instead of suffering the minds of the jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt.

*Shaffner, supra* at 65. While we are cognizant that *Shaffner* does not mention the *res gestae* exception, it plainly delineates the intent and identity exceptions and did not invoke *res gestae* to uphold the evidence. In contrast, in *Goersen, supra,* the Court upheld the admission of evidence showing that the defendant, a doctor, poisoned his mother-in-law before killing his wife via poison. The Court announced what is now the familiar refrain in cases involving bad acts evidence, stating:

> as a general rule, evidence of his participation in another independent and distinct crime, cannot be received simply for the purpose of proving his commission of the offence for which he is on trial: Whar.Crim. Ev. § 30; *Coleman v. People,* 55 N.Y. 90; *State v. Renton,* 15

N.H. 174; *Commonwealth v. Campbell,* 7 Allen 542; *Shaffner v. Commonwealth,* 22 P.F. Smith 60. It cannot be received to impeach his general character, nor merely to prove a disposition to commit crime. Yet under some circumstances, evidence of another offence by the defendant may be given. Thus it may be to establish identity; to show the act charged was intentional and willful, not accidental; to prove motive; to show guilty knowledge and purpose, and to rebut any inference of mistake; in case of death by poison, to prove the defendant knew the substance administered, to be poison; to show him to be one of an organization banded together to commit crimes of the kind charged; and to connect the other offence with the one charged, as part of the same transaction.

*Goersen, supra* at 398. The *Goersen* Court's final exception is an articulation of the *res gestae* exception. *See Commonwealth v. Claypool,* 508 Pa. 198, 495 A.2d 176, 179 (1985) (listing exceptions to general rule against bad acts and stating, "among these exceptions is the 'same transaction' or '*res gestae*' exception."); *Brown v. Commonwealth, supra.*

The *res gestae* exception itself was explored in *Brown v. Commonwealth* and *Swan, supra.* The *Brown v. Commonwealth* case involved an appeal after the defendant was convicted of murdering the wife of a wealthy farmer. The defendant was earlier convicted of killing the husband on the same date, although that conviction was reversed. The theory of the case was that the defendant killed the husband and wife in the process of robbing them of various valuables in their home. The defendant objected to the admission of evidence that the victims' son found the body of his father three hundred yards from his parents' home, after discovering

his mother badly injured inside, but still alive at that time. The Court concluded,

> That the commission of a distinct offence, even similar in character, cannot be given in evidence against the prisoner, was held in *Shaffner v. Commonwealth*, decided at Harrisburg in 1872 (22 P.F. Smith 60). But when two persons are murdered at the same time and place, and under circumstances evidencing that both acts were committed by the same person or persons, and **were part of one and the same transaction or *res gestae*,** and tend to throw light on the motive and manner of the murder for which the prisoner is indicted, the case is different. Such was the case here. The club found near to the husband being the probable instrument of the death of the wife also, and the motive, to wit, robbery, being one and the same, which led to the murder of both at the same time. Being parts of the same *res gestae*, they, together, tend to throw light on each other, and there is no reason that the truth should be thrown out by excluding the evidence objected to.

*Brown, supra* at 337 (emphasis added).

In *Swan, supra*, the defendant and a co-defendant were on trial for breaking into a store and taking away the contents of a safe. On the same date and in the same township, a house was broken into and items were taken. Swan's co-defendant pled guilty to the home burglary incident. The Supreme Court ruled that evidence of the home break-in and theft was inadmissible, despite being close in time and proximity. In doing so, the *Swan* Court opined, "[t]he collateral or extraneous offence must form a link in the chain of circumstances or proofs relied upon for conviction; as an isolated or disconnected fact it is of no consequence, a defendant cannot be convicted of the offence charged

simply because he is guilty of another offence." *Swan, supra* at 220.

Relying on *Swan*, the High Court in *Haines, supra*, rejected the usage of bad acts evidence. Haines earlier had allegedly committed a burglary with a co-defendant and the two men were separately being tried for the murder of Haines's father. The co-defendant testified at Haines's trial regarding the burglary. The *Haines* Court found that the prosecution failed to prove "that the burglarly [sic] was, proximately or remotely, connected with the crime laid in the indictment, or was one of a series of mutually dependent crimes connected with and resulting or terminating in, the murder of Haines." *Id.* at 643. The Court continued, noting,

> The Commonwealth made no attempt to show, nor did it appear by proof in the case, that the alleged burglary was other than an independent offense participated in by the parties, having no connection whatever with the crime charged in the indictment against the defendant. The two offenses are dissimilar in kind and purpose, and could not have been laid in the same indictment.

*Id.* Similarly, citing *Haines*, the Supreme Court reversed a murder conviction in *Gibson, supra*, where the Commonwealth asked the defendant, on trial for the murder of his wife, if he was convicted earlier of killing his brother. The *Gibson* Court concluded that there was no connection between the two crimes and that four years elapsed between the two incidents. It reasoned that the trial court's corrective instruction was insufficient as the defendant was burdened with defending against shooting two members of his own family.

The *res gestae* exception was more fully defined in *Coles, supra*, which cited approvingly from *Shaffner* and *Goersen*. The Court stated that bad acts evidence "is necessarily admissible as to acts which

are so **clearly and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible."** *Id.* at 827 (emphasis added). In *Coles*, the defendant and a group of others began to fire guns in a saloon fifteen minutes before the defendant shot a city detective attempting to disarm one of the defendant's compatriots.

The *Coles* Court cogently held:

The testimony in the present case touching the earlier occurrence in the saloon, although it disclose an offense there committed by the appellant and his associates other than the offense with which they were charged in the indictment, was not offered to prove the commission of the earlier offense, but was offered as part of the *res gestae* of the crime of which he was charged and convicted, the felonious killing of George Williams within 15 minutes at most after the occurrence at the saloon and at a place they reached in their flight to escape arrest about a city square distant. The killing of Williams followed almost immediately upon the arrival of the defendant and his three associates at the place where they came together. The sudden arrival of four men at that point with no ostensible object or purpose, the arrest of the flight by the intervention of the officer of the law, who was immediately killed thereafter by one of them while he was attempting to disarm another—these facts and others equally pertinent having a direct bearing on the question of defendant's guilt would have been left wholly unexplained on the trial except as the testimony in regard to the occurrence at the saloon had been admitted. **The two offenses were shown to have been so related in point of time and distance separating them as to make the earlier occurrence part of the *res gestae* attending the murder.**

*Id.* at 827–828 (emphasis added); *see also Coyle, supra.*

More recently, in *Sherwood, supra,* our Supreme Court upheld the introduction of evidence, based on the *res gestae* exception, that the defendant repeatedly abused the victim, a small child, before beating her to death. *See also Commonwealth v. Sam,* 535 Pa. 350, 635 A.2d 603 (1993). The High Court concluded that the evidence was relevant "to help establish the chain of events and pattern of abuse that eventually led to the fatal beating." *Sherwood, supra* at 497. The Court added that the probative value of the evidence was not outweighed by its prejudicial nature because the trial court prevented the Commonwealth from introducing evidence of prior abuse that occurred more than nine months from the day of the murder.

In *Lark, supra,* the principal case relied upon by the trial court, the defendant was charged with murdering the owner of a take-out restaurant, possession of an instrument of crime, terroristic threats involving repeated threats made to a prosecuting attorney, and kidnapping a woman and her two children by holding them hostage while attempting to elude capture by police. The murder victim identified Appellant as the person who robbed him of over $4,000 in cash and he was scheduled to testify at a preliminary hearing the day after his death. Lark was prosecuted by Assistant District Attorney Charles Cunningham for the robbery, despite the death of the witness. The defendant threatened Cunningham and absconded during the robbery trial. The robbery trial continued, and the defendant telephoned threats to the prosecutor. He also threatened two detectives attempting to apprehend him.

Officers eventually located the defendant, but he fled into the home of a woman and her two children and held them hostage for two hours. When the defendant was apprehended, he had the addresses of the prosecutor and the prosecutor's grandfather in his possession. In the context of discussing why severance of the charges was inappropriate, our Supreme Court highlighted that each crime was necessarily interwoven with the others and flowed directly from one another.

■ In sum, the history of the *res gestae* exception demonstrates that it is properly invoked when the bad acts are part of the same transaction involving the charged crime. We have found no case analogous to the one presented herein, nor has the Commonwealth cited to a single case where the sole exception to allowing the bad acts evidence was the *res gestae/* natural development exception and the evidence was not close in time and place from the acts charged.[6] It stretches the *res gestae* exception beyond its breaking point to consider Appellant's acts, in and before 1984, related to gaining a medical degree and license, as part of the natural sequence of events that led to Appellant allegedly dealing prescription drugs illegally from 2002 through 2004. The trial court, in relying on *Lark* to support its decision, never attempted to address the proximity in time or place or lack thereof with respect to the alleged bad acts being offered.

Instantly, the alleged bad acts are so far removed from the charged crimes that it strains credulity to consider them as a natural part of the history, chain, or sequence of events in the case when considering the exception in light of its history. The bad acts do not establish Appellant's relationship with his patients, nor are they part of the same transaction or interwoven in such a manner that failing to elucidate the jury to the information would render the case unintelligible. The prior alleged crimes are dissimilar in kind and purpose to the drug crimes and have no direct connection to the events that transpired in 2002 through 2004.

■ Finally, even if the bad acts evidence fell within the scope of the *res gestae*/history exception, the probative value of the evidence was outweighed by its prejudicial nature. It is beyond cavil that the crimes are not similar and that the time lapse between the crimes is extensive. Furthermore, the need for the prior bad acts evidence was questionable where the Commonwealth presented expert testimony regarding Appellant's actual treatment of the patients involved and the testimony of the patients themselves. Here, the Commonwealth proceeded as though it were still trying Appellant for crimes pertaining to his medical degree, which the trial court dismissed due to the statute of limitations. Allegations of fraud permeated the entire trial, consuming much of the prosecution's opening statement and almost three days of testimony. The prejudicial effect of the admission of this evidence, which bore a scant relationship to the actual charges being pursued, cannot be understated. Therefore, we hold that the trial court abused its discretion in admitting the bad acts evidence in the case *sub judice.* Since we find that Appellant's

6. The Commonwealth does rely upon *Commonwealth v. Cascardo*, 981 A.2d 245 (Pa.Super.2009). That case, however, involved evidence that the defendant was a loan shark and killed the victim because he owed him money. Thus, the bad acts evidence established the relationship between the defendant and victim and bears little similarity to the case at bar. This Court, in *Cascardo*, also held that the evidence was admissible for purposes of demonstrating motive.

claim regarding the trial court's utilization of the *res gestae* exception to allow the introduction of decades-old prior bad acts warrants relief, we decline to examine his remaining issue.

Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.