J.S83010/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
JOSEPH MIN, :
:
Appellant : No. 29 WDA 2016

Appeal from the Order December 10, 2015
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001894-2013

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, and STRASSBURGER,* JJ.

CONCURRING MEMORANDUM BY STRASSBURGER, J.: FILED: April 12, 2017

I agree with the result reached by the Majority, as well of most of the Majority's analysis. However, I disagree with the Majority's application of the *res gestae* exception to the rule that other bad acts are inadmissible.

Appellant claims that trial counsel "was ineffective for eliciting testimony regarding appellant's illegal drug use and/or failing to request a cautionary instruction." Majority Memorandum at 13. The jury heard that Appellant met S.E.'s mother through a mutual friend (Brown) when they were all receiving treatment for drug and alcohol addiction. *Id.* at 14. Appellant and Brown were roommates at a halfway house to which S.E. often went for meetings and to play billiards. *Id.* The Majority holds that this other-bad-acts evidence was admissible as part of the history of the case, to explain how Appellant met S.E. and her family. *Id.* at 13-15.

*Retired Senior Judge assigned to the Superior Court.

Such a broad application of the *res gestae* exception would result in its swallowing the rule. A review of the case law reveals that the exception was designed to allow such evidence only when its omission would render the narrative of the case nonsensical.

This Court's opinion in **Commonwealth v. Brown**, 52 A.3d 320, 328-32 (Pa. Super. 2012), is instructive. In that case, Brown, a licensed physician, was on trial for running a "scripts-for-cash" scheme from his home; specifically, he was charged with writing prescriptions between June 2002 and June 2004 for six patients that were not warranted by medical standards. In its case, the Commonwealth offered evidence that in the late 1970s and early 1980s Brown fraudulently obtained his medical degree and had submitted forged or altered documents to get his license. The trial court admitted the evidence as part of the history of the case.

On appeal, this Court extensively reviewed the history and purpose of the common law *res gestae* exception to the exclusion of other-bad-acts evidence. Back in 1883, for example, our Supreme Court indicated that "[t]he collateral or extraneous offence [*sic*] must form a link in the chain of circumstances or proofs relied upon for conviction...." **Id.** at 330 (quoting **Swan v. Commonwealth**, 104 Pa. 218, 220 (1883)). Focusing more on the necessity of interconnectedness, the **Brown** Court cited **Commonwealth v. Coles**, 108 A. 826, 827 (Pa. 1919), in which the Court asserted that

bad acts evidence "is necessarily admissible as to acts which are so **clearly and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible**."

**Brown**, 52 A.3d at 330-31 (quoting **Commonwealth v. Coles**, 108 A. 826, 827 (Pa. 1919)) (emphasis added in **Brown**).

An example of such inextricable entanglement is provided in **Commonwealth v. Lark**, 543 A.2d 491, 497 (Pa. 1988). In that case,

[Lark] was charged with murdering the owner of a take-out restaurant, possession of an instrument of crime, terroristic threats involving repeated threats made to a prosecuting attorney, and kidnapping a woman and her two children by holding them hostage while attempting to elude capture by police. The murder victim identified [Lark] as the person who robbed him of over $4,000 in cash and he was scheduled to testify at a preliminary hearing the day after his death. Lark was prosecuted by Assistant District Attorney Charles Cunningham for the robbery, despite the death of the witness. [Lark] threatened Cunningham and absconded during the robbery trial. The robbery trial continued, and [Lark] telephoned threats to the prosecutor. He also threatened two detectives attempting to apprehend him. Officers eventually located [Lark], but he fled into the home of a woman and her two children and held them hostage for two hours. When [Lark] was apprehended, he had the addresses of the prosecutor and the prosecutor's grandfather in his possession. In the context of discussing why severance of the charges was inappropriate, our Supreme Court highlighted that each crime was necessarily interwoven with the others and flowed directly from one another.

**Brown**, 52 A.3d at 331-32. Thus, the narrative made no sense unless all of the bad acts were understood.

- 3 -

Summarizing its review of these cases and others, the **Brown** Court stated that "the history of the *res gestae* exception demonstrates that it is properly invoked when the bad acts are part of the same transaction involving the charged crime." **Brown**, 52 A.3d at 332.

The Court ultimately concluded that Brown was entitled to a new trial:

> It stretches the *res gestae* exception beyond its breaking point to consider [Brown's] acts, in and before 1984, related to gaining a medical degree and license, as part of the natural sequence of events that led to [Brown] allegedly dealing prescription drugs illegally from 2002 through 2004.
>
> * * *
>
> [T]he alleged bad acts are so far removed from the charged crimes that it strains credulity to consider them as a natural part of the history, chain, or sequence of events in the case when considering the exception in light of its history. The bad acts do not establish [Brown's] relationship with his patients, nor are they part of the same transaction or interwoven in such a manner that failing to elucidate the jury to the information would render the case unintelligible. The prior alleged crimes are dissimilar in kind and purpose to the drug crimes and have no direct connection to the events that transpired in 2002 through 2004.

*Id.* *See also Commonwealth v. Green*, 76 A.3d 575 (Pa. Super. 2013) (holding evidence that Green pointed a gun at the victim in an unrelated incident months before the victim was murdered was not admissible under *res gestae* exception, as it "was in no way part of the same transaction or sequence of events that constituted the crime for which [Green] was being tried"; however, the evidence was admissible to prove motive or absence of mistake).

In the instant case, Appellant's status as a recovering addict does explain how he came to know S.E., but it is not part of the same transaction or sequence of events as his sexual relationship with S.E., and is nowhere near being so interconnected as to be inseparable from the relevant narrative as were the events were in *Lark*. While there are references to drug and alcohol treatment scattered through the testimony, it would not have been difficult to have avoided those issues.

For example, when asked about how she met Appellant, S.E. said she met him through her mother. N.T., 1/27-31/2014, at 34. On follow up, she said "She was living in McKees Rocks at the time, and she met [Appellant] through a mutual friend. They were all receiving treatment for drugs and alcohol." *Id.* at 35. Clearly, the mutual-friend explanation was sufficient, the rehab info was not necessary. Similarly, references to the club where they would hang out could have omitted its relationship to recovery meetings (as could the status of the place where Appellant and the mutual friend lived as a halfway house), and her mother's taking her to meetings did not have to mention 12-step programs. *Id.* at 37. Likewise, S.E.'s testimony that she and Appellant broke up after S.E. saw a text from another woman "asking for sex after one of their anonymous -- drug anonymous meetings" was gratuitous; she could have just indicated (as the prosecutor rephrased in the next question) that she broke it off because she thought he cheated on her. *Id.* at 53. Further, S.E.'s testimony that she

knew what she was doing with Appellant was illegal, but she was going through a rough time and not getting much attention at home because, *inter alia*, her mother had relapses was completely separable from Appellant's status as a recovering addict. *Id.* at 51-52.

Because Appellant's past drug use has nothing to do with the issue at trial, *i.e.*, whether he had a sexual relationship with S.E., and it is not so inextricably intertwined with the relevant issues that omission of such evidence would have made the story unintelligible, I believe that there is arguable merit to the claim that counsel should have sought to exclude references to Appellant's addiction history.

However, I agree with the Majority's conclusion that the evidence was "not particularly prejudicial" because there was no indication that Appellant was ever convicted of any drug crimes or relapsed. *See* Majority Memo at 15-16. Appellant has not convinced me that the outcome would have been different had counsel sought to exclude the references to his drug history. *Commonwealth v. Hutchinson*, 25 A.3d 277, 285 (Pa. 2011) ("To establish [prejudice], Appellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction."). Thus, I would affirm the PCRA court's denial of the claim on the basis Appellant has failed to establish prejudice.