J.S14019-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JAQUILL JAMES BLAKE, | : | |
| | : | |
| Appellant | : | No. 1429 MDA 2016 |

Appeal from the Judgment of Sentence December 10, 2015
in the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003085-2011

BEFORE:   GANTMAN, P.J., SHOGAN, and STRASSBURGER,* JJ.

CONCURRING MEMORANDUM BY STRASSBURGER, J.:**FILED APRIL 20, 2017**

I respectfully concur.  While I agree with the result reached by the Majority, I disagree with the Majority's conclusion that the *res gestae* exception was applicable in this case.

Appellant claims "that trial counsel was ineffective for failing to object to the introduction of evidence at the time of trial concerning Appellant's drug dealing."  Majority Memorandum at 4-5.  Appellant was convicted of shooting and killing Alexis Rosario (Rosario), following an argument at the Glenside Housing Projects in Reading, Pennsylvania.  N.T., 9/12/2012, at 81-84.  One of the Commonwealth's witnesses, Dean Schappell (Schappell), drove Appellant to and from the housing project where the incident occurred.  *Id.* at 142.  Schappell testified that he was in the city that day to purchase illegal drugs from Appellant.  *Id.* at 138-139.  He met Appellant at a specified location, and once there, Appellant asked Schappell to drive him

*Retired Senior Judge assigned to the Superior Court.

to the Glenside neighborhood. *Id.* at 140-142. Schappell agreed, and when they arrived at the housing projects, Schappell remained in the vehicle while Appellant exited the truck. *Id.* at 144. While waiting, Schappell heard gunshots, turned his head, and witnessed Appellant shooting Rosario. *Id.* at 144-146. Appellant eventually returned to the vehicle, told Schappell to drive away, and directed Schappell to a nearby Econolodge hotel. *Id.* 148-151. There, Schappell purchased drugs from Appellant before returning to his home in Hamburg. *Id.* at 151-152.

The Majority holds that this evidence was admissible as part of the history of the case, as it "formed the natural development of facts." *Id.* at 8. I find that such a broad application of the *res gestae* exception would result in its swallowing the rule.

This Court's extensive review of the history and purpose of the common law *res gestae* exception to the exclusion of other-bad-acts evidence in **Commonwealth v. Brown**, 52 A.3d 320, 328-32 (Pa. Super. 2012), is instructive. Back in 1883, for example, our Supreme Court indicated that "[t]he collateral or extraneous offence [*sic*] must form a link in the chain of circumstances or proofs relied upon for conviction…." **Id.** at 330 (quoting **Swan v. Commonwealth**, 104 Pa. 218, 220 (1883)). Focusing more on the necessity of interconnectedness, the **Brown** Court cited **Commonwealth v. Coles**, 108 A. 826, 827 (Pa. 1919), in which the Court asserted that

bad acts evidence "is necessarily admissible as to acts which are so **clearly and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible**."

**Brown**, 52 A.3d at 330-31 (quoting **Commonwealth v. Coles**, 108 A. 826, 827 (Pa. 1919)) (emphasis added in **Brown**).

An example of such inextricable entanglement is provided in **Commonwealth v. Lark**, 543 A.2d 491, 497 (Pa. 1988). In that case,

[Lark] was charged with murdering the owner of a take-out restaurant, possession of an instrument of crime, terroristic threats involving repeated threats made to a prosecuting attorney, and kidnapping a woman and her two children by holding them hostage while attempting to elude capture by police. The murder victim identified [Lark] as the person who robbed him of over $4,000 in cash and he was scheduled to testify at a preliminary hearing the day after his death. Lark was prosecuted by Assistant District Attorney Charles Cunningham for the robbery, despite the death of the witness. [Lark] threatened Cunningham and absconded during the robbery trial. The robbery trial continued, and [Lark] telephoned threats to the prosecutor. He also threatened two detectives attempting to apprehend him. Officers eventually located [Lark], but he fled into the home of a woman and her two children and held them hostage for two hours. When [Lark] was apprehended, he had the addresses of the prosecutor and the prosecutor's grandfather in his possession. In the context of discussing why severance of the charges was inappropriate, our Supreme Court highlighted that each crime was necessarily interwoven with the others and flowed directly from one another.

**Brown**, 52 A.3d at 331-32. Thus, the narrative made no sense unless all of the bad acts were understood.

- 3 -

Summarizing its review of these cases and others, the ***Brown*** Court stated that "the history of the *res gestae* exception demonstrates that it is properly invoked when the bad acts are part of the same transaction involving the charged crime." ***Brown***, 52 A.3d at 332.

In the instant case, the subsequent drug deal following the shooting was not part of the same transaction involving the **charged crime**. The evidence established that Appellant shot Rosario following an argument at the housing project. Because there was no evidence introduced that suggested the motive of the shooting involved Appellant's dealings with Schappell, Schappell's reason for driving Appellant to and from the scene of the crime is nowhere near being so interconnected as to be inseparable from the relevant narrative as were the events in ***Lark***.

Furthermore, while Appellant's drug dealing is mentioned throughout the testimony, it would not have been difficult to avoid those references. Schappell's eyewitness testimony could have been told without revealing why Schappell was in the city that day or his motivation for driving Appellant to Glenside.

Thus, because Appellant's drug dealing and Schappell's drug purchase from Appellant had nothing to do with the issue at trial, *i.e.*, whether Appellant shot and killed Rosario, and it is not so inextricably intertwined with the relevant issues that omission of such evidence would have made the story unintelligible, I believe that there is arguable merit to the claim

that counsel should have sought to exclude references to Appellant's drug dealing.

However, I agree with the Majority's conclusion that "Appellant has failed to prove the prejudice prong[,]" considering the "overwhelming evidence presented at trial that established [] Appellant was guilty of the crimes for which he was convicted." Majority Memorandum at 8. This evidence included the testimony of two eyewitnesses who placed Appellant at the scene of the crime and witnessed him shoot Rosario. *Id.* Appellant has not convinced me that the outcome would have been different had counsel sought to exclude the references to his drug dealing. ***Commonwealth v. Hutchinson***, 25 A.3d 277, 285 (Pa. 2011) ("To establish [prejudice], Appellant must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction."). Thus, I would affirm the PCRA court's denial of the claim on the basis Appellant has failed to establish prejudice.

P.J. Gantman concurs in the result.