J-S04012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SEBASTIAN ENRIQUE OLMEDA, | |
| Appellant | No. 317 MDA 2014 |

Appeal from the Judgment of Sentence November 18, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0006494-2011

BEFORE:  BOWES, ALLEN, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:　　　　　　　**FILED FEBRUARY 24, 2015**

Sebastian Enrique Olmeda appeals from the judgment of sentence of life imprisonment without parole after a jury found him guilty of first-degree murder.  After careful review, we affirm.

Appellant shot and killed Eddie Rivera on July 2, 2011, while Mr. Rivera was standing inside the home of Lydia Rivera-Ortiz.  Ms. Ortiz's niece was the victim's girlfriend. Both Ms. Ortiz and Mr. Rivera returned to Ms. Ortiz's home at 2:00 a.m., after returning from a local bar.  Upon arriving, Ms. Ortiz saw a group of people in a parking lot across from her home. Recognizing some of the individuals, she went over to the group to socialize. Mr. Rivera joined her approximately fifteen minutes later, and she

---

[*] Retired Senior Judge assigned to the Superior Court.

introduced him to some of the people who she knew. The victim then returned to Ms. Ortiz's residence.

After Mr. Rivera left, a man demanded that Ms. Ortiz leave and punched her in the face. This individual continued to strike Ms. Ortiz. Another male and two females joined in the attack. Ms. Ortiz acknowledged that none of these individuals was Appellant, and Appellant's brother helped push her away from the scuffle. However, after Ms. Ortiz retreated to her home, Mr. Rivera observed three men enter the gate to Ms. Ortiz's fenced in backyard. One of those persons was Appellant. Mr. Rivera asked Ms. Ortiz where she kept her knives, but Ms. Ortiz asked the victim to remain inside and confronted the trespassers.

Appellant, mistakenly believing Mr. Rivera was Ms. Ortiz's son, demanded that she bring her son outside. In addition, he informed her that, if Mr. Rivera did not come outside, he would go after him inside the home. Ms. Ortiz told Appellant that he was not permitted inside and he brandished a firearm. When Ms. Ortiz attempted to take the weapon, another individual restrained her by pulling her hair. Appellant, who was standing in the backyard, then fired a shot into the kitchen of the house. The bullet traveled through Mr. Rivera's left arm into his left lung, heart, and right lung. Appellant and his two compatriots then fled.

Ms. Ortiz found Mr. Rivera next to the front door of her house. Police arrived shortly thereafter. A kitchen knife was found on the floor in the

kitchen. The victim was unresponsive and a large pool of blood had already accumulated underneath his body. Police located a .40 caliber shell casing approximately one foot from the back patio of the house and 8.85 feet from the back door. An officer observed a bullet hole in the back screen door and shattered glass inside the residence. Police also discovered a beer bottle in the parking lot where Ms. Ortiz had previously been. That bottle had Appellant's fingerprint on it. Appellant claimed that he acted in self-defense in shooting the victim and that the victim had come at him with a knife.

In addition to these facts, the Commonwealth introduced evidence surrounding two other shooting incidents that occurred within two blocks of where the victim was found on the same night.[1] A witness testified that at approximately 3:20 a.m., while in his vehicle, gunshots from a parking lot on Market Street, hit his truck. That witness then saw a person in a white T-shirt run across the street. Police recovered eight shell casings from that area. Another individual indicated that he heard four or five gunshots. This witness also described seeing a man pistol whip a woman at the intersection of Franklin and Market Street after hearing those shots. When he confronted

_____

[1] Contradictorily, the trial court previously severed Appellant's murder trial from the charges relative to the other shootings. Severance is warranted where evidence of the other crimes is not admissible in both trials and/or trying both matters together would be too prejudicial. It is somewhat puzzling to sever the cases and then permit evidence from the other matters to be introduced, especially where the arguments by the Commonwealth opposing severance, and for the later introduction of the evidence, were identical.

the attacker, the person told him to get off his block and fired two shots in his direction before running across Market Street. The man was wearing a white T-shirt, dark pants and a hoody.

Police arrested Appellant that same date after seeing him running in an area after hearing gunshots. Appellant was wearing a white T-shirt and blue jeans. Appellant provided a false name and date of birth and denied having possessed a firearm. Police located one of Appellant's shoes and a firearm in the area where Appellant was apprehended. The weapon was loaded with three rounds. The single casing found at Ms. Ortiz's residence, the bullet fragments from the victim's body, and shell casings found in the areas of the other shooting incidents were fired from the gun police discovered.

The jury found Appellant guilty of the aforementioned charges and the court sentenced him to life imprisonment without parole. Appellant filed a timely post-sentence motion, which the court denied. This timely appeal ensued. The trial court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its opinion. The matter is now ready for our review. Appellant presents three questions for this Court's consideration.

> I. Did the trial court err when it admitted 404(b) evidence tending to show that the Defendant was a suspect in a separate shooting in a separate matter?

II.  Did the trial court err when it found the weight of the evidence was not so lacking that the jury's verdict did not shock one's sense of justice so that a new trial was necessary?

III.  Did the trial court err when it found the evidence presented at trial was sufficient to find Appellant guilty of Murder in the First-Degree?

Appellant's brief at 5.

Since Appellant's final claim relates to the sufficiency of the evidence for his murder conviction and a successful challenge would warrant a discharge rather than re-trial, we address that issue at the outset. In conducting a sufficiency of the evidence review, we view all of the evidence admitted, even improperly admitted evidence. *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We consider such evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. *Id*. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. *Id*.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Id*. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. *Id*. This Court is not

- 5 -

permitted "to re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id.*

Instantly, we conclude that there was more than sufficient evidence to establish that Appellant did not act in self-defense and intentionally shot and killed the victim. Appellant admitted to shooting the victim by claiming self-defense. Ms. Ortiz testified that the victim was inside the home and did not exit. The jury was free to believe this testimony and disregard Appellant's self-defense assertion. Appellant's sufficiency claim is without merit.

Having addressed the sufficiency of the evidence, we now consider Appellant's original claim. Appellant maintains that the trial court erred in admitting evidence regarding the other shooting incidents on the night of the victim's death. Evidence of bad acts is inadmissible to prove that a defendant has bad character or a criminal propensity. *See* Pa.R.E. 404(b). However, bad acts evidence is admissible for a host of reasons including to prove motive, intent, knowledge, absence of mistake, common scheme, to establish identity, and as part of the chain of events that form the history of the case. Pa.R.E. 404(b)(2); *Commonwealth v. Brown*, 52 A.3d 320 (Pa.Super. 2012). The probative value of the bad acts evidence must also outweigh its prejudicial impact in order to be admissible. *Commonwealth v. Powell*, 956 A.2d 406, 419 (Pa. 2008). In considering whether the probative value of the bad acts evidence outweighs its prejudicial nature, this Court has opined that:

courts must consider factors such as the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and "the degree to which the evidence probably will rouse the jury to overmastering hostility." McCormick, *Evidence* § 190 at 811 (4th ed. 1992). ***See also Commonwealth v. Frank***, 395 Pa.Super. 412, 577 A.2d 609 (1990) (enumerating balancing test factors, including ability for limiting instruction to reduce prejudice).

***Brown***, ***supra*** at 326-327. We consider the admission of such evidence under an abuse of discretion standard. ***Commonwealth v. Patterson***, 91 A.3d 55, 68 (Pa. 2014).

The trial court admitted the evidence in question on four separate grounds: to prove identity, to establish intent, to show the chain of custody of the murder weapon, and to provide the history and full chain of events. Appellant contests each of these grounds and asserts that, even if the evidence met one of these bad act exceptions, it still was more prejudicial than probative.

We find that the evidence was admissible as part of the history and natural sequence of events. In this regard, Appellant cursorily argues, without citation to legal authority, that Appellant had not been convicted of the other shooting and that there was no testimony showing that the later shootings were an extension of the homicide.

The history or "*res gestae*" exception was comprehensively outlined in ***Brown***, ***supra***. Therein, this Court pointed out that "evidence of other criminal acts is admissible 'to complete the story of the crime on trial by

proving its immediate context of happenings near in time and place.'" **Brown**, **supra** at 326. We add that "bad acts evidence 'is necessarily admissible as to acts which are so clearly and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible." **Id**. at 330-331 (emphasis removed).

Instantly, the later shootings were related to the investigation in this matter, and they established Appellant was apprehended and the firearm used in the murder was located. Indeed, several officers left the scene of the underlying crime to investigate the later shootings, before capturing Appellant. Police found the murder weapon after arresting Appellant fleeing from the area of one of the later shootings. The weapon was located next to a shoe belonging to Appellant. Ballistic testing revealed that the gun was used in the killing of the victim. These subsequent events reveal the police investigation, how Appellant was captured, and how the murder weapon was recovered.

The time lapse between the events was exceptionally short, taking place within an hour of the shooting in this case. Each crime involved shootings within a two block radius and ballistics confirmed that the same weapon was used in each incident. That Appellant had abandoned the weapon demonstrated a consciousness of guilt. Removing evidence of how

police arrested Appellant, found the murder weapon, and matched it to the scene of the crime herein would have left significant gaps in the presentation of the case. Accordingly, we find that the trial court did not abuse its discretion in finding that the probative value of the evidence outweighed its prejudicial nature.

Appellant's remaining challenge is to the weight of the evidence. A weight claim must be preserved in a timely post-sentence motion. **Commonwealth v. Lofton**, 57 A.3d 1270, 1273 (Pa.Super. 2012). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (emphases removed). Accordingly, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." **Id**.

A trial judge should not grant a new trial due to "a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." **Id**. Instead, the trial court must examine whether "'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id**. Only where the jury verdict "is so contrary to the evidence as to shock one's sense of justice" should a trial court afford a defendant a new

trial.  *Id*.  A weight of the evidence issue concedes that sufficient evidence was introduced.  ***Commonwealth v. Charlton***, 902 A.2d 554, 561 (Pa.Super. 2006).

Appellant's weight claim is untenable.  Nothing in this case shows that certain facts supporting Appellant's self-defense claim are "so clearly of greater weight" than the physical evidence and Ms. Ortiz's testimony that to rely on this latter evidence is to deny justice.  The verdict was not contrary to the evidence.  Accordingly, we find no abuse of discretion in the trial court's determination that its conscience was not shocked by the verdict.

Judgment of sentence affirmed.

Judge Allen joins the majority

Judge Strassburger concurs in the result

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2015