## THE STATE *vs.* RENTON.

An indictment for a riot need not allege any other unlawful purpose for which the rioters assembled, than that of disturbing the peace.

Upon the trial of such an indictment, evidence of riotous assemblages in previous years is not admissible, either for the purpose of rebutting a defence that this assemblage was of a peaceful character, by comparing it with former assemblages, or of giving a character in the first instance to the assemblage in question.

It is not competent to prove that a person has a disposition to commit the particular offence with which he is charged.

Upon the trial of an indictment for a riot, evidence that the respondent was engaged in riotous proceedings in previous years, is not relevant to the issue.

INDICTMENT for a riot in the town of Concord, in the evening of the 4th day of July, 1842.

Upon the trial, evidence was offered on the part of the prosecution to show that the citizens of Concord, at the annual meeting in March, 1842, adopted measures to put a stop to such proceedings as had in previous years taken place in that town on the 4th day of July. It appeared that the meetings of persons assembled on that day in previous years were of a riotous and disorderly character; that in the years 1839, 1840 and 1841, fires

were lighted in the State-house yard, fire balls were thrown, and property of various descriptions was burned; that the citizens were alarmed for the safety of their property, and were justified in attempting to prevent the recurrence of the danger; that much alarm was felt on the evening in question, and that the assemblage was more disorderly than usual. The proof of the riotous character of former assemblages was offered in part to rebut the position of the respondent's counsel, that this assemblage was harmless.

To this evidence the respondent's counsel objected, but it was admitted by the court.

A witness for the prosecution testified that on the fourth day of July, 1841, there was a coach body in his yard, and that some persons attempted to carry it away, for the purpose of burning it, and that he forbade them. He was then asked if he knew who the persons were, and he said he did know, and that the respondent was one of them. The respondent's counsel objected to this evidence, as incompetent.

The jury found the respondent guilty, and his counsel moved to set the verdict aside, on account of the admission of the evidence objected to. He also moved in arrest of judgment, because the indictment did not allege what purpose or act the respondent and others intended or assembled to perform.

*Peaslee,* (with whom was *Bartlett,*) for the respondent. By the 15th article of the Bill of Rights, an indictment should describe an offence "fully and plainly, substantially and formally." An indictment would be bad for riots in "the years 1840, 1841 and 1842." Evidence then is inadmissible to prove, upon the trial of this offence, that the respondent was engaged in riots in previous years. The evidence must apply to the issue, and if foreign from it, it should be rejected. 1 *Phillips's Ev.* 178; *Roscoe on Cr. Ev.* 73. It is improper to prove that the respondent has a disposition to commit such offences. 1 *Ph. on Ev.* 177. His general character cannot be shown, nor particular facts which go to make up his character. And there is no exception to the general rule relating to relevant evidence, which will admit testimony of

the kind we object to. *Roscoe Cr. Ev.* 74. The acts of conspirators on former occasions may be shown, but that is unlike the present case. *Roscoe Cr. Ev.* 87.

As to the motion in arrest of judgment, the case of *Regina* vs. *Galston,* 2 *Ld. Raym.* 1210, is in point, to show that an indictment for a riot must show explicitly for what act the rioters assembled.

*Gove,* Attorney General, for the State, argued at a previous term. It is not necessary in an indictment for a riot to allege the act the respondents intended to accomplish. It would be necessary to set out the intention or design of the meeting, in an indictment for an unlawful assembly, which is where three or more persons assemble themselves together to do an unlawful act. 4 *Bl. Com.* 146. But a riot is where three or more persons actually do (not merely intend to do,) an unlawful act of violence, either with or without a common cause or quarrel. *Ibid.; * 3 *Inst.* 176. In *Regina* vs. *Soley,* 11 *Mod.* 116, Ch. J. *Holt* said, " the books are obscure in the definition of a riot. I take it, it is not necessary to say they assembled for that purpose, but there must be an unlawful assembly." " And such an act as will make a trespass will make a riot." " If done by three or more in a turbulent manner." " If three come out of an alehouse, and go armed, it is a riot." A riot is a tumultuous disturbance of the peace, by three or more assembling together, of their own accord, with intent mutually to assist each other, (that is, having combined or made common cause, in contradistinction to three persons being present, acting individually, separately and independently of each other,) against those who shall oppose them in the execution of some enterprise of a private nature, and afterwards actually executing it in a violent and turbulent manner. *Hawk. P. C.* ch. 65, § 1; 1 *Russ. on Crimes* 350.

The forms of indictments generally set out the object of the meeting, and this is proper where there is doubt whether the assembly is a riot, or merely an unlawful assembly ; for where the object of the meeting is stated, the jury may acquit the respondents of the riot, and find them guilty of the unlawful assembly,

or *rout.* But they cannot so find, if the object of the meeting is not stated, to show that it was unlawful.

As to the competency of the evidence, the defence was that this was an innocent meeting, merely to celebrate the fourth of July, and that there was no improper occasion or design, and that the persons present were assaulted by others without cause. To rebut this, we showed what had been the character of these meetings in former years, and that the respondent had taken part in them. All this we might well do. See *Rex* vs. *Hunt,* 3 *B. & Ald.* 566, where it was held that the proceedings of former meetings, and at other places, might be shown, and that Hunt was present, and what part he took in the former proceedings.

GILCHRIST, J. The precedents of indictments for a riot do not state any specific purpose or act which the rioters intended or assembled to accomplish. *Davis's Precedents, No.* 304 ; 4 *Burn's Justice* 117 ; 4 *Wentworth's Pleadings* 309 ; *Davis's Civ. & Cr. Jus.* 600 ; *Commonwealth* vs. *Runnels,* 10 *Mass.* 518. All the precedents state that the persons assembled " to disturb the peace," and in some of the forms the unlawful acts they committed are specified. The precedent from Davis, referring to 2 *Stark.* 640, 2 *Chitty's Cr. L.* 488, states that the respondents on, &c. at, &c. did unlawfully assemble themselves together, to disturb the peace, and then and there being so assembled, did make a great noise, riot, &c. From these forms the inference is that the disturbance of the peace is a sufficiently precise statement of the purpose of the rioters. And this is a rational view of the matter. The rioters may have had no precise or definite object to accomplish, beyond disturbing the peace of the community. The disturbance of the peace is an unlawful purpose, which may be accomplished by noise, outcries, and general disorderly conduct, without attacking the person or property of any one. The case of *Regina* vs. *Galston,* 2 *Ld. Raym.* 1210, seems at first to support the position of the respondent's counsel. The marginal note of the case is, " an indictment for a riot must show explicitly for what act the rioters assembled." The indictment alleged that the respondents assembled " to do

and perpetrate something unlawful, and to disturb the peace."
It was held that this was too general, " and the act ought to be
shown, that the court might judge whether the act was unlawful
or not." Besides the authority derived from the precedents, it
may be remarked of this case, that the reason given by the court
for requiring more particularity, is not satisfactory, for the au-
thorities agree that it is not material whether the act intended to
be done by such an assembly be of itself lawful or unlawful. 4
*Burn's Just.* 119 ; *Hawk P. C. ch.* 65, § 7. The illustration given
by *Hawkins* is, that if persons, in a violent and tumultuous man-
ner, join together in removing a nuisance, which may lawfully be
done in a peaceable manner, they are as properly rioters as if
the act intended to be done by them were never so unlawful ;
for the law will not suffer persons to seek redress of their private
grievances by such dangerous disturbances of the public peace.
" And if in removing a nuisance the persons assembled use any
threatening words, (such as, they will do it, though they die for it,
or the like,) or in any other way behave in apparent disturbance
of the peace, it seems to be a riot." 1 *Russ. on Crimes* 268.
If one goes to assert his right with force and violence, he may be
guilty of a riot. *Anonymous,* 12 *Mod.* 648. In *Regina* vs. *So-
ley, Salk.* 594, the information stated that the respondents, with
force and arms, with noise and shouting, unlawfully, riotously and
routously hindered the bailiff and burgesses of Bewdley from pro-
ceeding in the election of a bailiff for the year ensuing. It was
held bad, because it did not appear that any right is claimed, nor
any such franchise pretended to, so that they might be doing an
unlawful act ; and also because it is not said that the defendants
unlawfully assembled. In a case between the same parties, *ibid.*
595, the information alleged that the respondents unlawfully, &c.
assembled to disturb the peace, and riotously and routously lifted
from its hinges, with force and arms, the door of a certain build-
ing called the Guildhall of Bewdley. This was held bad, because
it did not appear whose house it was. In the same case, report-
ed 11 *Mod.* 116, *Holt,* C. J. says, " the books are obscure in the
definition of a riot. I take it, it is not necessary to say they as-
sembled for that purpose, but there must be an unlawful assembly."

State *v.* Renton.

In *Regina* vs. *Galston,* the indictment alleged that the rioters assembled to do something unlawful, and to disturb the peace; but the true defect is that it is not alleged that they disturbed the peace, nor does the act appear to be unlawful. Unless one or the other of these acts appears to be done, the indictment is bad. Perhaps the reason which weighed with the court was, " that they would not encourage such ill drawn indictments ;" for, besides the other reasons, it contains Latin, which is bad even for law Latin. We are, on the whole, of opinion that the authorities support the present indictment, and that the motion in arrest of judgment should be overruled.

But we think that the verdict must be set aside, on account of the admission of incompetent and irrelevant evidence. Where a person is charged with an offence, it is important to him that the facts laid before the jury should consist exclusively of the transaction which forms the subject of the indictment, which alone he can be expected to be prepared to answer. It is, therefore, not competent for the prosecutor to give evidence of facts tending to prove another distinct offence, for the purpose of raising an inference that the prisoner has committed the crime in question. Nor is it competent to show that he has a tendency to commit the offence with which he is charged. Thus, on a prosecution for an infamous offence, an admission by the prisoner that he had committed such an offence at another time, was held to have been properly rejected. *Rex* vs. *Cole,* cited 1 *Ph. on Ev.* 499, (*8th Ed.*) The case of the respondent is to be tried upon its own merits. It must receive its character, not from what other persons have done at different times, but from his own acts on the occasion when he is accused of violating the laws. It is argued that reference may be made to what was done on a former day, that this transaction may then be compared with that, and thus may acquire a certain character. But then if found guilty, he would be so, not so much because what he did was wrongful in itself, but because his conduct on this occasion was like his conduct on some previous occasion. The two assemblies are to be compared with each other, and the first is more or less disorderly than the second. An assemblage in the month of July,

1842, is a riot, because it is like an assemblage in the preceding year, and that is riotous, because it was more disorderly than the assemblage in 1842. By comparing one with the other, we establish the guilt of the respondent by arguing in a circle. But that is to be shown by proof of what he did on the present occasion. It is of no consequence whether he is more or less culpable than he was on another occasion. He is not now on trial for any charge except that alleged in the indictment, and it does not alter the complexion of the evidence that it was introduced for the purpose of answering the position of the respondent, that the assemblage was harmless.

We have been referred to the case of *Rex vs. Hunt,* 3 *B. & Ald.* 566, as an authority for the admission of the evidence objected to. That was an indictment for an unlawful meeting, for the purpose of exciting discontent, and over which the respondent presided. It was held that resolutions, passed at a meeting assembled a short time before, and over which the respondent presided, in a distant place, and the avowed object of which meeting was that of the meeting mentioned in the indictment, were admissible in evidence, to show the intention of the respondent in assembling and attending the meeting in question. The object was to show the intent of the respondent, by what was in its nature a declaration of his sentiments. The case presents a different question from that now before us, and is not in point to show the admissibility of the evidence in this case.

*Verdict set aside.*