J-S08001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL ANTHONY LAPAGLIA | |
| Appellant | No. 104 WDA 2016 |

Appeal from the Judgment of Sentence dated September 21, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010922-2014

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED APRIL 13, 2017**

Appellant, Michael Anthony Lapaglia, appeals from the judgment of sentence of life imprisonment without parole imposed after a jury convicted him of murder of the first degree, robbery – inflict serious bodily injury, and burglary of a structure adapted for overnight accommodation while a person is present.[1]  We affirm.

Every Labor Day weekend, the Victim, Jack Parkes, and his fiancée, Carol Lapaglia, held a party at their home in Kennedy Township, Allegheny County, and invited all of their relatives, including Appellant, who is Ms. Lapaglia's nephew.  N.T. Trial, 6/9/15, at 154-55; N.T. Trial, 6/10/15, at 264-67; Trial Ct. Op., 8/2/16, at 4.  At the party held in September 2013,

---

[1] 18 Pa.C.S. §§ 2502(a), 3701(a)(1)(i), and 3502(a)(1), respectively.

numerous pieces of jewelry were taken from their home, and they immediately suspected Appellant, who had been seen in their bedroom during the party. Ms. Lapaglia called her sister-in-law and Appellant's mother, Marie Lapaglia ("Mother"), and told her about the theft, and Mother answered that Appellant had also stolen jewelry from her. None of Ms. Lapaglia's jewelry was ever recovered, and Appellant was never arrested or charged with the theft.

After Appellant graduated from high school, he enrolled in the military but was dishonorably discharged after being found in possession of synthetic marijuana. Trial Ct. Op., 8/2/16, at 4. The trial court then reports the following events prior to the crime at issue:

> Following his discharge, [Appellant] maintained that he suffered from post-traumatic stress disorder and he began to self-medicate and to experiment with other drugs to the point that he became addicted to heroin. On June 7, 2014, [Appellant] obtained employment as a teller for Dollar Bank and following his training, was given an office where he was to work. During an unannounced audit, it was determined that on July 1, 2014, [Appellant]'s cash drawer was short by nine hundred twenty-five dollars. A second audit was done on July 9, 2014, and it was determined that his cash drawer was short by eighteen hundred dollars. In light of the two unexplained shortages in such a very short period of time, a decision was made to terminate [Appellant] from his job.

*Id.*; *see also* N.T. Trial, 6/10/15, 218-22.

On July 21, 2014, Ms. Lapaglia went to work at approximately 5:40 A.M., leaving the Victim at home alone. N.T. Trial, 6/9/15, at 92, 95-97, 109. Ms. Lapaglia left work at approximately 2:30 P.M. and arrived home

about a half-hour later. When she entered her home, she saw the Victim lying on the floor between a coffee table and a couch, with a single gunshot wound to the head, and she called 911. *Id.* at 100-01; N.T. Trial, 6/10/15, at 338, 340. The Victim was pronounced dead at the scene. The next day, Ms. Lapaglia discovered that jewelry had been taken from her house. N.T. Trial, 6/9/15, at 107-08, 110-11, 117-18, 177.

On the same day as the murder, a white male and a white female entered a pawn shop known as Cash for Collectibles owned by Theodore Hazlett; they were carrying a large amount of gold jewelry in a pouch and seeking to sell it. N.T. Trial, 6/9/15, at 163-71; Trial Ct. Op., 8/2/16, at 6. Mr. Hazlett told the couple that he did not have enough money with him that day to buy all of the jewelry and asked them to return the next day at 11:00 A.M., but they did not. Shortly after the pair left, Mr. Hazlett called the Sharpsburg Police Department and told the chief of police that he thought someone was trying to sell him stolen jewelry. Mr. Hazlett later identified Appellant as the male seller. N.T. Trial, 6/9/15, at 168, 171.

"On August 5, 2014, Appellant was taken into custody by the Allegheny County Police and advised that he was being charged with the crime of criminal homicide" in connection with Victim's death. Trial Ct. Op., 8/2/16, at 7. At first, Appellant "maintained that he had no involvement with the death and knew nothing about that homicide." *Id.* Then, he claimed that an individual known as "Big Black Bro" had given him the bag

- 3 -

full of jewelry to pawn. *Id.* After police confronted Appellant with records that showed his cellular telephone "pinging"[2] off the cellular tower that was closest to the Victim's home at 10:07 A.M. on the day of the homicide, Appellant told them that he had waited in the car while a drug dealer named "Stink" burglarized the Victim's home and that Stink had shot the Victim when "things did not go well." *Id.* at 8.

Appellant then "asked for a bathroom break and when he came back from that break, he told the police that he wanted to talk to them." Trial Ct. Op., 8/2/16, at 8. Appellant admitted to stealing jewelry from the Victim's home but claimed that he shot the Victim in self-defense, after the Victim had attacked him and put him in a headlock. *Id.* at 8-9. He added that he saw the Victim fall to the floor and that he "panicked" and grabbed jewelry from the house. N.T. Trial, 6/10/15, at 299. He further explained that his girlfriend had waited in his automobile while he committed the burglary and that they had then attempted to pawn the jewelry in Sharpsburg. Trial Ct. Op., 8/2/16, at 8-9. He also disclosed that he gave the firearm to Big Black Bro in exchange for heroin and $40. N.T. Trial, 6/10/15, at 304-05.

---

[2] A "ping" determines "the real time location of [a] cell phone by looking at the cell signal between the phone and the closest cell tower and finding the last known address where the cell phone transmitted a signal requesting service." *Commonwealth v. Rushing*, 71 A.3d 939, 946 (Pa. Super. 2013), *rev'd on other grounds*, 99 A.3d 416 (Pa. 2014).

On May 15, 2015, and June 5, 2015, the Commonwealth provided notice of its intention to present evidence at Appellant's trial of other crimes, wrongs, or acts allegedly committed by Appellant, pursuant to Pa. R. Evid. 404(b).[3] Specifically, the Commonwealth intended to introduce evidence of Appellant's termination from his employment with Dollar Savings Bank and of the prior theft from the Victim's home. The Commonwealth alleged that these prior bad acts established the motive, plan, and opportunity that Appellant had to commit the crimes for which he would be on trial. N.T. Trial, 6/8/15, at 9.

---

[3] Rule 404(b) states:

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

*(3) Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa. R. Evid. 404(b) (bolding and italics in original).

Appellant was tried from June 8 to 11, 2015. In the course of the trial, over Appellant's objection, the court admitted as evidence the materials identified in its Rule 404(b) notice. In a later opinion, the court explained its decision:

> [Appellant] has suggested that this Court erred in allowing evidence of prior bad acts with respect to his termination from employment at Dollar Savings Bank and a prior theft from Parkes' residence. The Commonwealth presented evidence that [Appellant] was employed as a teller by Dollar Savings Bank and over a very short period of time had two shortfalls in his cash drawer. They also provided the testimony from Carol Lapaglia that at a Labor Day party a year prior to [the Victim's] death, that a number of pieces of [the Victim's] jewelry and her jewelry were stolen and that [Appellant] had committed those thefts. The Commonwealth filed a motion to produce evidence pursuant to Pennsylvania Rule of Evidence 404.b of prior bad acts in order to establish the motive, plan and opportunity that [Appellant] had to commit the crimes for which he was on trial. In particular, the Commonwealth wanted to show the fact that he had been fired from his job at Dollar Savings Bank for theft because of his need for money to support his drug habit and that he knew that the victim had a considerable amount of jewelry and coins which could easily be pawned. . . . The evidence presented by the Commonwealth of [Appellant]'s bad acts was designed to prove motive, intent and common plan. It was offered for the purpose of showing [Appellant]'s need for money to support his heroin addiction and the fact that he would commit criminal activity to support that addiction. As with all of his other claims of error, this claim is also without merit.

Trial Ct. Op., 8/2/16, at 18-19.

In an opinion issued on August 2, 2016, the trial court set forth the remaining procedural history of this case, as follows:

> On June 11, 2015, following a jury trial, [Appellant] was found guilty of first degree murder, robbery and burglary. A presentence report was ordered in aid of sentencing and on December 9, 2015, [Appellant] was sentenced to the

mandatory sentence of life without the possibility of parole for his conviction of first degree murder, and a consecutive sentence of ten to twenty years for his conviction of the crime of robbery. No further penalty was imposed upon him for his conviction of the crime of burglary. [Appellant] filed timely post-sentence motions and then filed amended post-sentence motions and a hearing on those motions was continued several times at [Appellant]'s request. On January 8, 2016, a hearing was held on his post-sentence motions and those motions were denied on January 12, 2016.

[Appellant] filed a timely appeal to the Superior Court and he was directed, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), to file a concise statement of matters complained of on appeal. [Appellant] compl[ied] with that directive[.]

Trial Ct. Op., 8/2/16, at 2. Appellant presents one issue for review:

Did the [t]rial [c]ourt abuse its discretion in admitting evidence of two alleged prior bad acts when the Commonwealth was unable to produce any evidence to support its contention that the prior bad acts demonstrated knowledge, motive, or intent?

Appellant's Brief at 3.

"A trial court's decision regarding an evidentiary ruling is governed by an abuse of discretion standard." *Commonwealth v. Brown*, 52 A.3d 320, 325 (Pa. Super. 2012), *appeal denied*, 62 A.3d 377 (Pa. 2013).

Appellant contends that "the trial court abused its discretion in allowing the Commonwealth to introduce evidence of two alleged prior bad acts" – Appellant's "alleged Labor Day weekend theft" from the Victim's residence and Appellant's "termination from Dollar Bank" – "when those alleged bad acts did not meet a recognized exception." Appellant's Brief at

10. According to Appellant, "[o]ther than the alleged victim and location, there is absolutely nothing linking" these events. *Id.* at 13. Appellant adds that the evidence of the alleged Labor Day theft and his termination from the bank relates to events "so factually distinct from the death of [the Victim] that it cannot be introduced as evidence of motive." *Id.* at 13, 15.

Under Rule 404 —

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009), *cert. denied*, 559 U.S. 1111 (2010).

Here, we agree with the trial court that evidence that Appellant had been fired from his employment at Dollar Savings Bank for theft, N.T. Trial, 6/10/15, 218-22; Trial Ct. Op., 8/2/16, at 4, could, if believed by the fact-finder, establish a motive that he needed money to support his drug habit. *See* Pa. R. Evid. 404(b)(2) ("This evidence [of crimes, wrongs, or other acts] may be admissible for . . . proving motive"); *Sherwood*, 982 A.2d at 497; *see also* Trial Ct. Op., 8/2/16, at 19 ("The evidence presented by the

Commonwealth of [Appellant]'s bad acts . . . was offered for the purpose of showing [Appellant]'s need for money to support his heroin addiction").

We similarly discern no abuse of discretion in the trial court's reasoning that evidence of the jewelry theft on Labor Day 2013 and of Ms. Lapaglia's suspicion that Appellant was the culprit, N.T. Trial, 6/9/15, at 154; N.T. Trial, 6/10/15, at 264-67; Trial Ct. Op., 8/2/16, at 4, was admissible to show that Appellant knew that the Victim and Ms. Lapaglia had a considerable amount of jewelry in their home. *See* Pa. R. Evid. 404(b)(2) ("This evidence [of crimes, wrongs, or other acts] may be admissible for . . . proving . . . knowledge"); *Sherwood*, 982 A.2d at 497.

Additionally, any potential infirmity in the trial court's evidentiary ruling as to Appellant's prior bad acts was harmless. As the Supreme Court of Pennsylvania has explained:

> In the event of an erroneous admission of evidence, a verdict can still be sustained if the error was harmless. *See Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119, 144 (2008). An error is harmless if it could not have contributed to the verdict, or stated conversely, an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction. *Id.* We have found harmless error where:
>
> > "(1) the error did not prejudice the defendant or the prejudice was *de minimis;*
> >
> > (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or

> (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict."
>
> *Id.* (quoting *Commonwealth v. Young*, 561 Pa. 34, 748 A.2d 166, 193 (1999) (citation omitted)). The Commonwealth has the burden of proving harmless error beyond a reasonable doubt. *Id.* at 143.

*Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015), *cert. denied*, 137 S. Ct. 89 (2016).

Here, the properly admitted evidence was overwhelming. Appellant conceded that he drove to the Victim's home with a firearm. Trial Ct. Op., 8/2/16, at 8. Appellant also admitted that the Victim was shot with Appellant's firearm — of which Appellant later disposed — and that Appellant had seen the Victim fall to the floor. N.T. Trial, 6/10/15, at 299, 304-05; Trial Ct. Op., 8/2/16, at 8-9. Despite claiming to have "panicked," Appellant had the wherewithal to procure a large amount of jewelry and other valuables. N.T. Trial, 6/10/15, at 299. On the same day as the murder, Appellant attempted to pawn the items that had been stolen from the Victim's house, in exchange for cash. N.T. Trial, 6/9/15, at 163-71; N.T. Trial, 6/10/15, at 299; Trial Ct. Op., 8/2/16, at 6-9.

Thus, even if the evidence of the Labor Day theft and Appellant's termination at the Dollar Bank had been erroneously admitted, the prejudicial effect of those errors was so insignificant when compared to the properly admitted evidence that the errors could not have contributed to the

verdict. *See Poplawski*, 130 A.3d at 716. Hence, any potential error was harmless. *Id.*

Therefore, based upon our review of the record, the lower court did not abuse its discretion in allowing the Commonwealth to introduce evidence of both prior bad acts. *Brown*, 52 A.3d at 325. Thus, Appellant's sole issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2017