J-S16030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MATTHEW JASON HAILEY | : | |
| | : | |
| Appellant | : | No. 1655 EDA 2019 |

Appeal from the Judgment Entered January 28, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0008422-2017

BEFORE: DUBOW, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED AUGUST 14, 2020**

Matthew Hailey appeals from the judgment of sentence[1] imposed on January 28, 2019, following his jury trial conviction of possession with intent to deliver ("PWID") methamphetamine.[2] Specifically, he claims that the evidence was not sufficient to support his PWID conviction, the verdict was against the weight of the evidence, and the trial court erred when it did not declare a mistrial after alleged prosecutorial misconduct. We affirm.

> The following facts were adduced at trial. At 4:49 a.m. on November 21, 2017, Officer Daniel Rose of the Montgomery Township Police Department was in his patrol car in the parking lot of the Rodeway Inn located at 969 Bethlehem Pike, Montgomeryville, Montgomery County. Officer Rose observed a

---

[1] Although Hailey purported to appeal from the trial court's order denying his motion for a new trial, an appeal is properly taken from the judgment of sentence entered, not an order denying post-sentence motions. We have amended the caption accordingly.

[2] 35 P.S. § 780-113(a)(30).

black Audi sedan exit from State Route 309 northbound and turn into the parking lot of the motel. The vehicle passed the officer and continued towards the rear of the parking lot. The light over the sedan's license plate was out and it appeared that a piece of paper was covering the license plate. Officer Rose followed the vehicle.

Officer Rose observed the vehicle park in the rear of the parking lot. [Hailey] exited the vehicle from the front passenger seat, began walking, then stopped and turned around upon noticing Officer Rose in a marked police car. [Hailey] then got back in the car he had just exited. The driver then pulled around to the front of the motel where [Hailey] again exited the vehicle and headed toward the front desk. At this point the officer turned on his emergency lights, instructed the vehicle to stop and called [Hailey] back to the vehicle.

The driver of the vehicle, later determined to be Lacey Williams, initially provided false information regarding her identity. Williams refused to grant permission for Officer Rose to search her vehicle. When questioning [Hailey] about what he and Williams were doing at the motel, [Hailey] "began to ask why [Williams] wouldn't let us search the car." He told Officer Rose that there must be something in the vehicle and then stated that he thought there was "meth" in the vehicle. Officer Rose observed [Hailey] light a cigarette with a butane lighter, which Officer Rose testified is commonly used to smoke methamphetamine based upon his training and experience. [Hailey] also told Officer Rose that he worked as a painter.

Officer Rose then observed two individuals come out of one of the motel rooms and walk toward Williams' vehicle. Williams told Officer Rose that she and [Hailey] were meeting up with these two people at the motel. [Hailey], however, stated that he did not know the other two people, was not there to meet with them and that he was going to a motel room "to get lucky."

Officer Pete Byrne and Officer Tony Shearer arrived in the parking lot to assist Officer Rose. [Hailey] re-entered the front passenger seat of Williams' vehicle. [Hailey] told Officer Byrne, like he had told Officer Rose, that he was a painter. He also remarked to Officer Byrne that he thought there might be methamphetamine in the sedan.

After discovering that Williams had an active warrant, the officers arrested Williams and impounded her vehicle. [Hailey] was

released and was not searched or charged at that time. Officer Rose allowed [Hailey] to retrieve his phone from the center console of Williams' vehicle before he left. Although [Hailey] did not ask to retrieve any other items, Officer Rose observed [Hailey] reach into the back of the vehicle. Officer Rose then ordered [Hailey] out of the car.

Williams' vehicle was taken to the Montgomery Township Police Department impound lot. While Williams was being processed and after a trained canine had alerted to the presence of narcotics in her vehicle, Williams changed her mind and consented to a search of her vehicle. Officer John Rushin searched Williams's vehicle later that same day, November 21, 2017. Officer Rushin located a closed black headphone case in an open shelving area on the dash between the two front seats of the vehicle. Within the case was U.S. currency and a black box. Within the black box were two bags of a substance which appeared to be methamphetamine and a digital scale. The parties stipulated that one bag contained 27.22 grams of methamphetamine and the other bag contained 2.91 grams of methamphetamine. The digital scale was one commonly used in narcotics trafficking. Also contained in the headphone case were unused plastic baggies of a type commonly used for packaging controlled substances.

Officer Rushin also located a backpack on the floor in the rear of Williams' car behind the passenger's seat. Officer Rushin found a notebook in the backpack with [Hailey's] name and address, as well as a log Defendant kept of his recent work hours. Officer Rushin also found unused narcotics packaging material, some of it identical to that in the headphone case. Some of the packaging materials were stuffed into a Sherwin Williams paint supply bag. A label for another painting supply company was found on the bottom of the backpack. The backpack contained two digital scales commonly used for narcotics trafficking which appeared to have methamphetamine residue.

Lacey Williams testified she sold methamphetamine as her main source of income since 2015. She went to the Rodeway Inn on the morning of November 21, 2017 because she had no water or electricity at her residence and because she planned to sell methamphetamine at the motel. Williams testified that [Hailey] was with her in the car when she arrived at the motel. [Hailey] was involved in an earlier argument with his girlfriend and asked Williams to pick him up from his girlfriend's apartment. Williams testified [Hailey] placed a backpack in the back seat of her car

- 3 -

when she picked him up before going to the motel to sell methamphetamine.

Williams testified that she purchased an ounce of methamphetamine earlier that morning or the night before and had sold an "eightball" to [Hailey]. They discussed [Hailey] selling some portion of that methamphetamine to a friend of his. Williams gave [Hailey] some of the unused bags found in his backpack to sell methamphetamine. She stated that the larger bag of methamphetamine that was recovered by police in the headphone case was the remainder of the amount she had purchased, and the smaller bag was the remainder of the eightball she sold earlier to [Hailey]. Williams and [Hailey] had smoked part of the eightball that morning and continued to smoke methamphetamine during the drive to the Rodeway Inn. She did not recall if [Hailey] had paid her the money for the eightball, but she regularly sold on credit and stated that she would have been willing to sell to [Hailey] on credit.

Trial Court Opinion, 9/23/19, at 2-5 (record citations omitted).

After a two-day trial, a jury convicted Hailey of one count of PWID methamphetamine. The trial court sentenced Hailey to three to six years of incarceration. Hailey filed a timely post-sentence motion, which the trial court denied on May 20, 2019. This timely appeal followed.

Hailey raises two issues for our review.

1. Did the trial judge err as a matter of law by allowing a verdict to stand that was against the weight and sufficiency of the evidence in terms of the issue that [Hailey] never possessed with the intent to deliver a controlled substance either constructively or by actually possessing it?

2. Did the trial court err by allowing the prosecutor, in his opening and closing arguments, to blatantly bolster the credibility of Lacey Williams by commenting to the jury on the truthfulness of her testimony based on the prosecutor's personal knowledge, and abuse its discretion in denial of a mistrial for such prosecutorial misconduct?

Hailey's Br. at unnumbered page 4.

Although stated as a single question, Hailey's first question raises two distinct issues: a challenge to the sufficiency of the evidence and a challenge to the weight of the evidence. Hence, we will deal with each issue in turn.

Hailey challenges the sufficiency of the evidence introduced at trial to support his conviction of PWID methamphetamine. He claims that the evidence was insufficient to prove that he possessed the methamphetamine and that he intended to sell it. **See id.** at unnumbered pages 10-11. We disagree.

Our standard of review concerning challenges to the sufficiency of the evidence is to determine whether the evidence at trial and all reasonable inferences therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, are sufficient for the trier of fact to find each element of the crime beyond a reasonable doubt. **See Commonwealth v. Brown**, 52 A.3d 320, 323 (Pa.Super. 2012).

"Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." **Id.** (citation omitted). Notably, the "evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." **Id.** (citation omitted). Further, the Commonwealth may establish the elements of the crime by wholly circumstantial evidence. **See id.**

Hailey was convicted of violating section 780-113(a)(30) of the Controlled Substance, Drug, Device, and Cosmetic Act, which prohibits, *inter*

*alia*, the possession with intent to deliver a controlled substance. ***See*** 35 P.S. § 780-113(a)(30). In order to prove a violation of this section, the Commonwealth must establish two things, first that the defendant possessed the drugs in question, and second that the defendant intended to deliver them. To sustain its burden, the Commonwealth may establish either actual physical possession or constructive possession. ***See Commonwealth v. Jones***, 874 A.2d 108, 121 (Pa.Super. 2005). "Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control," and the prosecution may prove it by the totality of the circumstances. ***Id.*** Finally, "[t]he amount of the controlled substance is not crucial to establish an inference of possession with intent to deliver, if . . . other facts are present." ***Commonwealth v. Watley***, 81 A.3d 108, 114 (Pa.Super. 2013) (citation and internal quotation marks omitted).

In the instant case, viewing the evidence in a light most favorable to the Commonwealth, as we are required to do by our standard of review, the evidence at trial was sufficient to prove that Hailey possessed methamphetamine with the intent to deliver it. The evidence introduced at trial demonstrated that Hailey was a passenger in Williams' vehicle. When he spoke with Officers Byrne and Rose, he told both officers that he believed there was methamphetamine in the vehicle. When officers searched the vehicle, they found two distinct quantities of methamphetamine—27.22 grams that Williams admitted was hers, and a smaller quantity of methamphetamine, 2.91 grams—both in the front passenger area of the vehicle. Williams testified

that she had sold that smaller amount to Hailey, and that he intended to sell some of it to another friend. Officers additionally found a backpack in the rear of the vehicle containing several of Hailey's personal items as well as two digital scales with methamphetamine residue, and unused baggies. Williams testified that Hailey had placed the backpack in the car, and that she had provided him with the baggies. Based on the evidence, the jury reasonably inferred that Hailey possessed methamphetamine and intended to sell it. Hailey's challenge to the sufficiency of the evidence to support his conviction does not merit relief.

Second, Hailey claims that the guilty verdict was against the weight of the evidence. He contends that the only evidence proving that he possessed the methamphetamine, or intended to sell it, came from the testimony of Williams, and argues that her testimony lacked credibility because she was charged with providing false information to law enforcement. **See** Hailey's Br. at unnumbered page 11. Hailey's argument is unpersuasive.

A defendant must make a weight challenge to the trial court in the first instance; we review the trial court's rejection of such a claim for abuse of discretion. **Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003) (citation omitted). "A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." **Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013) (citations omitted). "[C]redibility determinations are

made by the fact finder and . . . challenges thereto go to the weight . . . of the evidence." ***Commonwealth v. Gaskins***, 692 A.2d 224, 227 (Pa.Super. 1997).

After considering Hailey's weight claim, the trial court concluded that "the jury's verdict, including their decision to credit the testimony of Williams, was not contrary to the weight of the evidence and did not shock the court's sense of justice." Trial Ct. Op., at 9. The jury was free to believe all, part, or none of Williams' testimony against Hailey, and it was exclusively within the jury's province to weigh these matters. Thus, we conclude that the trial court did not abuse its discretion when it found that Hailey's conviction is not so contrary to the evidence as to shock one's sense of justice. Hence, Hailey's weight claim is meritless.

In his final issue, Hailey claims that the trial court erred and permitted prosecutorial misconduct when the prosecutor bolstered the credibility of Williams in his opening and closing statements. This issue is waived.

"If the defendant thinks the prosecutor has done something objectionable, he may object, the trial court rules, and the ruling—not the underlying conduct—is what is reviewed on appeal. Where, as here, no objection was raised, there is no claim of 'prosecutorial misconduct' as such available." ***Commonwealth v. Tedford***, 960 A.2d 1, 29 (Pa. 2008). In addition, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Our review of the notes of testimony of the trial revealed no instances where Hailey objected to any statements made by the prosecutor during either the Commonwealth's opening statement or closing argument. Nor does it reveal where Hailey sought a mistrial because of such statement.[3] Accordingly, there is no ruling of the trial court concerning the allegedly objectionable statements. Thus, we conclude Hailey has waived this issue for failure to raise it before the trial court. Accordingly, we conclude that Hailey's issues are meritless or waived, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/14/20

---

[3] Hailey's brief does not specify where in the notes of testimony the alleged prosecutorial misconduct is contained, nor does he cite to where in the record he moved for a mistrial. **See** Pa.R.A.P. 2119(c) (requiring reference to place in record where matter referred to appears). This Court will not play the role of advocate and argue an appellant's case for him.