**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEJANDRO SOLORIO | : | |
| | : | |
| Appellant | : | No. 1966 MDA 2019 |

Appeal from the Judgment of Sentence Entered October 29, 2019
in the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0005522-2018

BEFORE:  BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:               **FILED SEPTEMBER 17, 2020**

Alejandro Solorio ("Solorio") appeals from the judgment of sentence entered following his convictions of two counts of simple assault, and one count each of strangulation, recklessly endangering another person, and harassment.[1]  We affirm.

On February 2, 2018, Solorio and his girlfriend, Carolyn Salinas (the "victim"), engaged in an argument in their apartment in Reading, Pennsylvania.  At some point during the argument, Solorio grabbed and twisted the victim's arm.  The victim attempted to escape by biting Solorio.  Solorio then slammed the victim against a wall and squeezed her neck with both of his hands.  The victim lost control of her bladder, which caused Solorio

---

[1] 18 Pa.C.S.A. §§ 2701(a)(1), (3), 2718(a)(1), 2705, 2709(a)(1).

to release her. Shortly thereafter, as the victim was in the bathroom changing clothes, Solorio entered the bathroom and grabbed the victim around the neck a second time.

The victim escaped from the apartment, and drove to Reading City Hall, which contained a police station, in order to file a Protection from Abuse Order (a "PFA") against Solorio. The victim spoke with an attendant at the front desk, who directed her to the courthouse to file for a PFA. As this was occurring, Solorio called and texted the victim's phone with threatening messages. The victim returned to the apartment, where Solorio met her at the front door.[2] At that time, Solorio punched the victim in the chest. The victim again escaped from Solorio, hid in her car, and called the police.

Reading Police Officer Victor Morrison ("Officer Morrison") responded to the apartment, where the victim reported the assault. Solorio was arrested at the scene. Three days later, the victim sought medical treatment from Lisa Medina, M.D. ("Dr. Medina"). The victim reported, and Dr. Medina observed, various injuries and pain to the victim's neck, cervical spine, wrist, and knee.

On January 4, 2019, Solorio was charged with the above-mentioned offenses, and one additional count of harassment. Solorio's trial took place on October 29, 2019, during which the jury heard testimony from the victim, Officer Morrison, Dr. Medina, and Solorio. Solorio denied ever striking or

---

[2] The victim testified that she did not file for a PFA on the night of the assault, but did file for a PFA at a later date. N.T., 10/29/19, at 59.

choking the victim. At the conclusion of the trial, the jury found Solorio guilty of one count of strangulation, two counts of simple assault, and one count of reckless endangerment. The trial court found Solorio guilty of one count of harassment, and not guilty of the second count of harassment. On the same day, the trial court sentenced Solorio to two-and-a-half to ten years in prison for strangulation, and a consecutive term of two years of probation for reckless endangerment.[3]

Solorio filed post-sentence Motions, challenging the sufficiency and weight of the evidence for the convictions of strangulation, and requesting reconsideration of his sentence, which the trial court denied. Solorio filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Solorio raises three issues for our review:

1. Whether the verdict of guilty to … strangulation … was based on insufficient evidence when the Commonwealth did not establish that the [victim]'s breath or circulation of blood was impeded[?]

2. Whether the verdict of guilty to [strangulation] was in error and against the weight of the evidence where, *inter alia*, [the victim] went to police to get a PFA soon after being attacked by [Solorio], but did not tell police of the attack; [the victim] testified that she had pictures of herself taken after she was attacked, but those pictures were not shown to police or medical staff; [and] when police arrived on the scene, the only injury that was observed on [the victim] was a bruise that police described as "old[?]"

3. Whether the trial court erred and abused its discretion by imposing a sentence of incarceration of not less than 2[½]

---

[3] Solorio's simple assault and harassment convictions merged for the purposes of sentencing.

years[,] nor more than 10 years[,] when the sentence was inconsistent with the factors of the protection of the public, the gravity of the offense, as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of [Solorio?]

Brief for Appellant at 10.

First, Solorio argues that the evidence presented at trial was insufficient to convict him of strangulation. *Id.* at 24-29. Solorio claims that the Commonwealth failed to prove, beyond a reasonable doubt, that the victim's breathing was actually "impeded" when Solorio was choking her. *Id.* at 24. Specifically, Solorio asserts that because the victim only testified that she was "getting to where [she] couldn't breathe," rather than testifying that she could not breathe, the Commonwealth could not sustain its burden to convict him of strangulation. *Id.* at 26. Further, according to Solorio, even if he did impede the victim's breathing, he did not do so intentionally; thus, the Commonwealth could not sustain its burden. *Id.* at 28-29.

A challenge to the sufficiency of the evidence presents a question of law; our standard of review is *de novo*, and our scope of review is plenary. ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1076 (Pa. 2017). When analyzing whether sufficient evidence existed to support a conviction, we must "view the evidence in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the jury could have found every element of the crime beyond a reasonable doubt." ***Commonwealth v. Thomas***, 215 A.3d 36, 40 (Pa. 2019). "The evidence established at trial need

not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Commonwealth v. Brown***, 52 A.3d 320, 323 (Pa. Super. 2012). "[T]he uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." ***Commonwealth v. Johnson***, 180 A.3d 474, 482 (Pa. Super. 2018). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Vargas***, 108 A.3d 858, 867 (Pa. Super. 2014) (*en banc*). Additionally, we may not "re-weigh the evidence and substitute our judgment for that of the fact-finder." ***Id.***

In order to convict Solorio of strangulation, the Commonwealth needed to prove that he "knowingly or intentionally impeded the breathing or circulation of the blood of another person by … applying pressure to the throat or neck[.]" 18 Pa.C.S.A. § 2718(a)(1). A victim's breathing needs only to be "impeded" by the actor to constitute strangulation. ***Id.*** "Impediment" is defined as "[a] hindrance or obstruction[.]" *Impediment*, BLACK'S LAW DICTIONARY (11th ed. 2019).

As the trial court stated in its Opinion,

> [t]he [v]ictim testified that [Solorio] placed both hands around her neck and squeezed for what she believed to be several minutes. The [v]ictim expressed that her ears were ringing, her face felt hot[,] and she felt as if her head were about to pop. The

[v]ictim then stated that she was getting to the point where she couldn't breathe or scream, and that she ended up urinating on herself.

Dr. Medina, who examined the [v]ictim several days after the incident, indicated that she observed anterior neck swelling around the soft tissue of the neck. While Dr. Medina did not observe any bruising, she noted that the soft tissue was tender and inflamed[,] and that the [v]ictim, though with full range of motion, was in pain on the exercise of such motion.

The testimony presented at trial was sufficient to support the conviction. The [v]ictim testified that [Solorio] impeded her breathing by squeezing with his hands around her neck. Observation by Dr. Medina, though not necessary, supports the [v]ictim's testimony. The statute requires nothing more than the knowing or intentional act of impeding a person's breathing or circulation by either "applying pressure to the throat or neck" or by "blocking the nose or mouth of the person." Since the [v]ictim's uncorroborated testimony may be believed by the jury to establish the elements of the crime, we find that the Commonwealth presented sufficient evidence and that [Solorio]'s allegation lacks merit.

Trial Court Opinion, 2/4/20, at 6-7.

The record confirms the trial court's determination. At trial, the victim testified that, while Solorio was choking her, he stated, "shut up right now, or I'll shut you up." N.T. (Trial), 10/29/19, at 52. The victim testified that Solorio choked her with both of his hands for several minutes, and then choked her again with one hand while she was in the bathroom. *Id.* at 47-48, 52. Further, Dr. Medina testified that her physical examination of the victim matched the description the victim gave to Dr. Medina of the assault. *Id.* at 69, 73.

In this case, it is clear that the victim's testimony of her ears ringing, her face getting hot, her head feeling like it was going to blow off, her inability to scream or control her bladder, and her description that she was "getting to where [she] couldn't breathe" all established that the victim's ability to breathe was "hindered" or "obstructed." *Id.* at 52. Based on the foregoing, the evidence, viewed in the light most favorable to the Commonwealth as the verdict-winner, was sufficient to establish that Solorio knowingly impeded the victim's breathing by applying pressure to her neck with his hands. As a result, Solorio's claim that the evidence was insufficient to support his guilty verdict for strangulation fails.

In his second claim, Solorio argues that his conviction of strangulation was against the weight of the evidence. Brief for Appellant at 30-34. Solorio asserts that the victim's testimony lacked credibility and, as a result, "tip[ped] the evidentiary balance so heavily in [Solorio's] favor as to preclude a safe conviction, and to warrant a reversal thereof." *Id.* at 31. In support, Solorio directs our attention to the victim's behavior on the night of the assault, wherein she left the apartment, travelled to City Hall to obtain a PFA, but did not mention the details of the assault while she was there, and later returned to the apartment. *Id.* at 32. Solorio further argues that the testimony of Officer Morrison and Dr. Medina showed that the victim did not have any recent bruising either on the night of the assault or several days later. *Id.* at 31-32. Solorio also directs our attention to the victim's claims that she had

taken photographs of her injuries shortly after the attack, but later could not reproduce the photographs either to police or to Dr. Medina. *Id.* at 33.

Our standard of review related to weight of the evidence claims is well settled.

> The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 741 A.2d 666, 672-73 (Pa. 1999). Additionally, where the trial court has ruled on the weight claim, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence; rather, our appellate review is limited to whether the trial court abused its discretion in ruling on the weight claim. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003).

The trial court ably addressed Solorio's weight of the evidence claim as follows:

> [T]he jury was free to afford the weight and credibility it saw fit to the testimony and evidence presented at trial. The jury clearly believed the [v]ictim's recollection and testimony of the events that occurred during the incident. Given the testimony presented by the [v]ictim, the observations of Dr. Medina following the attack, and the testimony presented by [Solorio] during the trial, we find nothing in the jury's verdict that shocks the conscience of this court or that it is so contrary to the evidence as to characterize a miscarriage of justice. As such, we find that [Solorio]'s alleged error lacks merit.

Trial Court Opinion, 1/31/20, at 8-9 (citations to record omitted).

Our review of the record confirms that the trial court did not abuse its discretion when it concluded that the jury's verdict was not against the weight of the evidence. The jury was free to assess the victim's credibility, afford her testimony the appropriate weight, and resolve any inconsistencies in her testimony. **See Champney**, **supra**. Discerning no abuse of discretion by the trial court, this claim fails.

In his third claim, Solorio argues that the trial court imposed an excessive sentence for his strangulation conviction. Brief for Appellant at 22. Solorio asserts that the trial court, in crafting its sentence, "abuse[d] its discretion when it considered [his] alleged mendacity while testifying at trial[,] because the trial court did not properly consider the factors set forth in **Commonwealth v. Thurmond**, [] 407 A.2d 1357 ([Pa. Super. ]1979). According to Solorio, this also constitutes consideration of an impermissible factor at sentencing. Brief for Appellant at 22-23.

Solorio's claim challenges the discretionary aspects of his sentence. "It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." **Commonwealth v. Mastromarino**, 2 A.3d 581, 585 (Pa. Super. 2010). Before we address the merits of a discretionary sentencing claim,

> [w]e conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial

question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (some citations omitted).

In this case, Solorio filed a timely Notice of Appeal, challenged the discretionary aspects of his sentence in a post-sentence Motion, and included a separate Rule 2119(f) Statement in his Brief.[4]  Additionally, Solorio's assertions that the trial court improperly considered impermissible sentencing factors can raise a substantial question for our review.  ***Commonwealth v. Downing***, 990 A.2d 788, 792 (Pa. Super. 2010) (concluding that a claim that the trial court relied on improper sentencing factors raises a substantial question).  Thus, we will consider the merits of Solorio's claim.

We adhere to the following standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.  In this context, an abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that the

---

[4] We note that the Commonwealth has objected to Solorio's Rule 2119(f) Statement.  ***See*** Brief for Appellee at 23-26.  The Commonwealth contends that Solorio failed to include his claim in his Rule 1925(b) Concise Statement.  ***Id.*** at 21-23.  Additionally, the Commonwealth asserts that Solorio's claim is insufficient, as "[n]o facts or argument are set forth in support of the bald assertion" that the trial court improperly considered Solorio's untruthful testimony when it calculated his sentence.  ***Id.*** at 26.  However, when read in conjunction with his post-sentence Motion and Rule 1925(b) Concise Statement, we do not find Solorio's Rule 2119(f) Statement so deficient that we must deem the issue waived.  We are satisfied that Solorio has preserved his challenge to the trial court's consideration of his untruthful testimony that resulted in an excessive sentence.

sentencing court ignored or misapplied the law, exercise its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Robinson*, 931 A.2d 15, 26 (Pa. Super. 2007) (citation omitted).

"In every case in which the court imposes a sentence for a felony … the court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Mouzon*, 812 A.2d 617, 620-21 (Pa. 2002) (plurality). The Sentencing Code also provides that "the [trial] court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. McClendon*, 589 A.2d 706, 713 (Pa. Super. 1991) (stating that "the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation."). Further, the trial court must consider the Sentencing Guidelines. *Commonwealth v. Sheller*, 961 A.2d 167, 190 (Pa. Super. 2008).

Although a court's consideration of false testimony is not improper as a matter of law, its right to do so is not unlimited. *Commonwealth v. Bowersox*, 690 A.2d 279, 281-82 (Pa. Super. 1997). Relying on false

- 11 -

testimony for sentencing purposes can only be justified if certain factors are satisfied. **Thurmond**, 407 A.2d at 1359. This Court in **Thurmond** set forth the six factors as follows:

> First, the misstatements must be willful. Unless the defendant has willfully offered false testimony, the fact that the testimony was untrue does not of itself show that the defendant is not likely to respond to efforts at rehabilitation. Second, the misstatement must be material, not of marginal importance. Only material falsehoods sufficiently bear on a defendant's character to justify enhancing punishment. Third, the verdict of guilt must necessarily establish that the defendant lied, not merely that the jury did not believe his testimony. This requirement ensures that a defendant can receive a stiffer penalty based on giving false testimony only when the finder of fact has determined, beyond a reasonable doubt, that the testimony was willfully false. Fourth, the verdict must be supported by sufficient credible evidence. If the jury's verdict is to form the basis for enhancement of sentence, that verdict must have a rational foundation in evidence of record. Fifth, the trial court, if not acting as the trier of fact, must observe the testimony allegedly false. The cold record of the testimony and the verdict affords a meager basis for the sentencing court to determine whether the defendant's testimony demonstrated a character not likely susceptible to rehabilitation. Finally, the court may consider the defendant's lying only as one fact among many bearing on sentence.

**Id.** at 1359-60 (citations omitted).

The sentencing judge put the following reasons for its sentence on the record at the sentencing hearing:

> I've taken into account many things here. The first and foremost is I've taken into account the findings of the jury which are paramount here and which must be respected.
>
> I've taken into account the testimony of [the victim], both during the course of trial and in this sentencing proceeding.
>
> I've taken into account, also, the testimony of [Solorio], and we do not punish people for exercising their right to trial by jury

- 12 -

here. That being said, we do take into account and look down on with the utmost gravity defendants who demonstrate what the law calls mendacity, which is a nice word for lying, and it's perfectly clear that the jury did not believe the defendant's testimony. Quite frankly, I'm not shocked that they didn't believe his testimony because much of it was just totally incredible.

Nevertheless, he, in effect, called indirectly at least called the police officers liars. He certainly called the victim a liar, and the violent nature of these offenses is, of course, most disturbing and I note, also, that there was physical evidence and medical testimony that corroborate the victim's condition after these assaults.

N.T. (Sentencing), 10/29/19, at 9-10.

Here, the trial court satisfied the six **Thurmond** factors in calculating Solorio's sentence. First, Solorio's statements under oath were clearly willful, as there was no confusion or ambiguity in his testimony that he definitively did not choke the victim. **See Thurmond**, 407 A.2d at 1360 (describing the first factor as the appellant "not assert[ing] an inability to recollect, lack[ing] certainty or reveal[ing] any other fact describing that the falsity of her testimony is attributable to other than a willful decision to give false testimony."). Second, the portions of Solorio's testimony that the jury found to be incredible concerned the material aspects of his conviction; specifically, whether Solorio wrapped his hands around the victim's neck and choked her. N.T. (Trial), 10/29/19, at 89. Third, the jury's verdict finding Solorio guilty of strangulation demonstrates that Solorio's testimony was untruthful, as Solorio testified specifically that he did not choke the victim at any point during the assault. **Id.** Fourth, for the reasons discussed *infra*, the jury's verdict was

- 13 -

supported by sufficient evidence. Fifth, the trial court observed Solorio's testimony at trial, which occurred on the same day as when it imposed Solorio's sentence. Sixth, the trial court clearly considered several other factors when calculating Solorio's sentence, such as the victim's testimony and the Sentencing Guidelines. **See** N.T. (Sentencing), 10/29/19, at 9-10. Moreover, we note that the trial court had the benefit of a PSI. **See id.** at 2-4 (wherein the trial court states, "[w]e have a PSI[,]" and the trial court and counsel discussed the contents therein); **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988) (explaining that where a sentencing court considered a PSI, it is presumed that they are "aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.").

In this case, not only did the trial court properly consider Solorio's alleged mendacity, but also the testimony of the victim at sentencing, the nature of Solorio's conduct and his criminal history and had the benefit of a PSI. **See Bowersox**, 690 A.2d at 283 (stating that "the court may consider false trial testimony only as one fact among many bearing on sentence.") Further, Solorio's sentence for strangulation fell within the standard range of the Sentencing Guidelines. **See** 18 Pa.C.S.A. §§ 2718(d)(2)(i); **see also Moury**, 992 A.2d at 171 (stating that "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code."). Accordingly, the trial court's reliance on

Solorio's mendacity was not prejudicial, did not result in an excessive sentence, and did not constitute an abuse of discretion. *See Thurmond*, 407 A.2d at 1360.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/17/2020